**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Luis Raul AQUINO, Defendant–Appellant.**

No. 87–1692.

United States Court of Appeals, Tenth Circuit.

Jan. 11, 1988.

Before HOLLOWAY, Chief Judge, SETH and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Aquino was convicted of one count of illegally possessing a firearm pursuant to 26 U.S.C. § 5861 (1982). He appeals the district court's denial of his motion to suppress evidence seized during a search of his apartment. We affirm.

## I.

This case began with an investigation into illegal drug trafficking by the Lakewood, Colorado police. Lakewood Department of Public Safety Agent Gina Morelli went undercover to purchase illegal drugs. A confidential informant took her to the home of Steven Ruebush, who the informant believed sold cocaine.[1] They arrived about 5:00 p.m. on May 19, 1986. Agent Morelli offered $2000 for one ounce of the drug. As expected, Ruebush did not have the cocaine himself; however, he asserted that if Morelli gave him the $2000 he could get some. Agent Morelli refused and told Ruebush to call his source.

Ruebush then called Tony Vega, whom Ruebush referred to as "his man." He told Vega that he had seen "a lot of green" and that the buyer wanted to see some drugs. The conversation ended with Ruebush agreeing to go to Vega's home to discuss the deal. Police officers stationed outside Ruebush's home followed him to Vega's residence while Morelli and the informer remained. A few minutes later, Ruebush returned home. He told Agent Morelli that his man was going to get the cocaine and would deliver it in twenty minutes.

Meanwhile, officers who had remained at Vega's home saw him leave immediately after Ruebush had gone. They followed him to an apartment complex at 6005 West 28th Ave. Vega entered the complex, but the officers did not identify the apartment he visited. Vega left after a short time and returned directly home. When Rue-

Mark T. Langston (Victor L. Abbo with him on the brief), Boulder, Colo., for defendant-appellant.

Kenneth R. Fimberg, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

**1.** The informant wore a listening device allowing officers involved in the operation to know immediately what transpired in the Ruebush home.

bush called, Vega told him that the source required cash in advance. In response to this common practice among drug dealers, Agent Morelli then agreed to front a smaller amount of money for a sample of cocaine. If all went well, she would then pay the remaining amount. Ruebush returned to Vega's residence with $400 from Morelli.

After Ruebush arrived, Vega drove directly to the 28th Avenue apartment complex while Ruebush waited at Vega's home. This time, the police observed Vega enter a particular apartment. He left shortly thereafter and drove directly home. Ruebush then called Morelli to say that he was on his way back. He arrived at approximately 7:45, produced a small amount of cocaine, and was immediately arrested. Shortly after the arrest, Ruebush's phone started ringing, but he was not allowed to answer. He told the police that he believed that the caller was Vega. At this time, the police also questioned several other persons who had arrived during various stages of the transaction. Although some were uncooperative and at least one produced false identification, the police released these individuals, believing that insufficient probable cause existed for their arrest.

After securing the Ruebush residence, police proceeded to Aquino's home. Because the apartment was in Edgewater, the officers contacted the local police. The Lakewood officers then waited thirty to forty minutes, or until 9:20 p.m., for the Edgewater police to arrive. Without attempting to secure a warrant or determine who lived in the apartment, the officers from the two towns planned a warrantless entry. Edgewater officers knocked on the door and told the woman who answered and identified herself as Maria Martinez that they had heard a complaint about

noise. When she opened the door, two Lakewood officers rushed in with guns drawn to find Aquino on his living room couch holding a baby.

The agents then conducted a "protective sweep" of the apartment.[2] During this sweep, one agent entered a closed closet and observed an OHAUS triple beam scale, a grinder, and other paraphernalia often used by drug dealers. No other incriminating evidence or suspects were observed during the sweep. The officers arrested Aquino and obtained consent from him and Ms. Martinez to search the apartment. The consent search revealed cocaine, guns, and over $3000 in cash including the marked bills used by Agent Morelli to purchase the sample of cocaine. The officers seized the evidence.

Aquino was charged with two counts of illegally possessing a firearm. He filed a motion to suppress both the evidence seized and various incriminating statements he made after the warrantless entry of his home. The district court denied the motion. Aquino was then convicted on one count and sentenced to fifty-four months in prison. He appeals the denial of his motion to suppress on the ground that the warrantless entry of his home was unconstitutional.

## II.

"[T]he most basic constitutional rule" in the search and seizure area is that exceptions to the warrant requirement must be "specifically established," "well delineated" and "jealously and carefully drawn."[3] *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971). The notion that

---

**2.** The constitutionality of the officers' actions after they entered Aquino's apartment, namely the initial protective sweep, the procuring of consent to search, and the full scale search, are not raised on appeal. Accordingly, we express no opinion concerning the propriety and scope of the warrantless protective sweep of Aquino's home or the subsequent full scale consent search.

**3.** Police violate the Fourth Amendment when they engage in a warrantless search and no

exception to the warrant requirement applies. *See Thompson v. Louisiana,* 469 U.S. 17, 19–20, 105 S.Ct. 409, 410, 83 L.Ed.2d 246 (1984). Despite considerable debate, the warrant requirement remains "[t]he bulwark of Fourth Amendment protection ...," *Franks v. Delaware,* 438 U.S. 154, 164, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978), and "a cardinal principle" of existing law, *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978).

emergency circumstances may in appropriate cases make a warrantless search constitutional if probable cause exists is a clearly established exception to the warrant requirement. *Welch v. Wisconsin*, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed. 2d 732 (1984). The contours of a sufficient emergency, however, remain unclear. *See Coolidge*, 403 U.S. at 455, 91 S.Ct. at 2032 (exception to warrant requirement requires "that the exigencies of the situation made that course imperative"). Because this is the third drug investigation/exigent circumstance case to reach this court in the past year, *see United States v. Chavez*, 812 F.2d 1295 (10th Cir.1987); *United States v. Mabry*, 809 F.2d 671 (10th Cir.1987), we examine the question closely.

■ We begin by exploring the relevant Supreme Court pronouncements on the issue. When police seek to enter a home without a warrant, the government bears the burden of proving that sufficient exigency exists. *See Coolidge*, 403 U.S. at 455, 91 S.Ct. at 2032; *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970). Because "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable," *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), this burden is especially heavy when police seek to enter a suspect's home even pursuant to a legitimate seizure. *See Vale*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (proper street arrest pursuant to a warrant does not justify house search); *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (search warrant required to arrest individual in the home of a third person); *Payton*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (arrest warrant required to seize a person in his own home). The only case in which the Supreme Court has held the exigent circumstance exception sufficient to justify

warrantless entry into a suspect's home involved the hot pursuit of a fleeing felon whom the police could have lawfully arrested without a warrant. *United States v. Santana*, 427 U.S. 38, 42–43, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976) (police who attempt to arrest felon outside home may pursue her if she takes refuge inside).

■ In a hot pursuit case, warrantless entry is in part "justified by the significant risk that the [evidence] would no longer be in the [suspect's] possession if the police waited until a warrant could be obtained." *Santana*, 427 U.S. at 44, 96 S.Ct. at 2410 (Stevens, J., concurring). In such cases, however, the intrusion is also justified by the suspect's flight, which frustrates police efforts to make a legitimate warrantless arrest. *Id.* at 43, 96 S.Ct. at 2410 ("a suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place"). Where police do not have the right to make a warrantless arrest, police knowledge that evidence will be destroyed by a nonfleeing suspect is not always sufficient to justify a warrantless entry. *Cf. Welch*, 466 U.S. at 754, 104 S.Ct. at 2100 (destruction of evidence by suspect whom police have probable cause to arrest does not justify warrantless entry into suspect's home when underlying crime is minor). Even with probable cause to arrest, the destruction of evidence alone justifies a warrantless entry into the home only when the state interest in preventing the crime (as determined by the penalty imposed for violations) is sufficiently great.[4] *Id.* Although the gravity of the crime cannot in itself create sufficient exigency for a warrantless search, *cf. Thompson v. Louisiana*, 469 U.S. 17, 21, 105 S.Ct. 409, 411, 83 L.Ed.2d 246 (1984) (homicide cannot justify warrantless search), independent exigent circumstances can justify Fourth Amendment intrusions when the police are investigating grave crimes even though similar

---

**4.** Aside from its specific holding that a nonjailable traffic offense could not support a warrantless entry absent hot pursuit, the *Welsh* Court shed little light on what exigencies would justify warrantless entry when more serious offenses were involved. Notably, the court cited cases

allowing warrantless entry based on exigent circumstances in cases involving murder and armed robbery, but not in cases involving burglary without weapons and distribution of controlled substances. *See* 466 U.S. at 752, 104 S.Ct. at 2099.

circumstances would not justify warrantless intrusions for less serious offenses. *See Welsh,* 466 U.S. at 754, 104 S.Ct. at 2100.[5]

One additional consideration relevant to determining when police can enter a home without a warrant is made clear by the Court's discussion of arrest warrants. As the Court pointed out in *Steagald,* 451 U.S. at 215, 101 S.Ct. at 1649, exception to the warrant requirement must not create a "potential for abuse." The Court expressed concern that the police not be placed in a situation where they can create the exception, because well-meaning police officers may exploit such opportunities without sufficient regard for the privacy interests of the individuals involved. *See id.*

### III.

█ The Supreme Court cases discussed above mandate the following conclusions: An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of an unknown suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of the evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

Accordingly, the test in this circuit requires probable cause and exigent circumstances. *Cuaron,* 700 F.2d 582, 586 (10 Cir.1983). In our two post-*Payton* home entry cases, the probable cause issue was conceded. *Mabry,* 809 F.2d at 678; *Cuaron,* 700 F.2d at 586. In addition, both cases involved serious drug trafficking offenses in which factors beyond police con-

trol gave the officers reason to believe that the suspect would destroy evidence. *Mabry,* 809 at 674–75 (arrestee told police he had to return to his source with the money "right away"); *Cuaron,* 700 F.2d at 586–87 (officers knew of more cocaine in home, supplier wanted to sell quickly, and individuals observed coming and going). We have also upheld warrantless seizures when they are limited to a temporary internal seizure of the home until a warrant could be obtained, and are confined to a protective sweep for weapons or accomplices. *Erb,* 596 F.2d at 417. Most significantly, we have pointed out that police should begin the process of obtaining a warrant at the earliest prudent moment. *See Chavez,* 812 F.2d at 1300; *Mabry,* 809 F.2d at 675; *Cuaron,* 700 F.2d at 587–90; *Erb,* 596 F.2d 412, 419 (10th Cir.1979). We have also stressed that when a telephone warrant procedure is available, police must exploit it. *Cuaron,* 700 F.2d at 588–91.[6]

### IV.

#### A. Probable Cause

█ Aquino first argues that probable cause to enter his home did not exist in this case. We disagree. Ruebush told Agent Morelli that "his man" would have to get the drugs from another source. The police then followed Ruebush to the home of Vega, presumably his man, who in turn traveled directly to and from Aquino's apartment. The participants in the drug transaction twice followed this travel path without diversion. After the first run through, Ruebush said the ultimate source would not front the cocaine. After the second, Ruebush produced a small amount of the drug. As soon as the police saw the cocaine, but not before, " 'the facts and

---

**5.** The Court in *Welsh* noted that this sort of exigency analysis has the benefit of tying the evaluation to a concrete factor, length of sentence, that police officers could be expected to know. *See* 466 U.S. at 754 & n. 14, 104 S.Ct. at 2100 & n. 14.

**6.** Many state and municipal police forces have not yet implemented telephone warrant proce-

dures. State law enforcement officers nevertheless have the option of contacting a federal agent or government attorney who can request a telephone warrant from a federal magistrate. *Mabry,* 809 F.2d at 693 n. 3 (McKay, J., dissenting) (citing *United States v. Johnson,* 641 F.2d 652 (9th Cir.1980)).

circumstances within their ... knowledge and of which they had reasonably trustworthy information [were] sufficient in themselves to warrant a man of reasonable caution in the belief that' " contraband was located in the apartment Vega twice visited. *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979) (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). Thus, although the police were not certain that the cocaine came from Aquino, they clearly had probable cause to search Aquino's home for additional drugs.

### B. Exigent Circumstances

 Acquino also contends that the circumstances were not sufficiently exigent to support a warrantless entry of his home. Our cases indicate that the sale of illegal drugs is a sufficiently severe offense to justify a warrantless entry when police "have reason to believe that criminal evidence" will be destroyed if they do not immediately enter the premises. *Cuaron*, 700 F.2d at 586. The question remains as to what facts meet this standard. We have stressed that an important consideration is the time necessary to procure a warrant, which was estimated to be three hours by the officers involved in this case. A telephone warrant was unavailable under applicable local law, and nothing in the record suggests that federal agents were involved in the operation. Thus, in order to justify a warrantless entry, the police had to have a reasonable basis for believing that suspects would destroy evidence within three hours.

When determining whether police had reason to believe that evidence would be destroyed, we have never held that the police can automatically justify the warrantless entry of a home merely by engaging in a two-part drug transaction and interrupting it after the first part. Like our previous cases, however, this case involves more than the interruption of a two-part drug transaction. Individuals were present during the arrests who gave evasive answers to police questions. The required release of these persons created the possibility that news of the arrests would reach others in the drug connection. More importantly, Reubush's phone rang after his arrest, and he stated that Vega was probably calling. This provided additional evidence that the source of the cocaine was growing suspicious. We conclude that this evidence created sufficient reason to believe that criminal evidence would be destroyed if the police did not immediately enter Aquino's apartment.

Although the police had reason to believe a warrantless entry was necessary, we are distressed by the lack of any evidence in the record that the police ever began the process of procuring a warrant even though a local magistrate was on duty at the time. When Ruebush produced the cocaine, but not before, the police had probable cause to believe that Aquino had illegal drugs in his apartment. Nine officers were directly involved in this operation; any one of them could have been dispatched to the magistrate. Similarly the relevant information could have been radioed or telephoned to the station house where an officer not directly involved in the investigation could have sought a warrant. *Cf. Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (officers may rely on other officers' representation of facts establishing probable cause). No matter how reasonable a warrantless entry may be, unanticipated delays may prevent the police from entering a home immediately. Here, the questioning of individuals at the arrest scene and the need to contact and wait for police from another jurisdiction created a significant delay. Had the police immediately begun the process of procuring a warrant, it might have been available at the time of entry, eliminating any possibility of a Fourth Amendment violation or the exclusion of incriminating evidence.

 Our previous exigent circumstance cases have emphasized that the police be-

gan the process of obtaining a warrant as soon as they had probable cause. *See Chavez,* 812 F.2d at 1300; *Mabry,* 809 F.2d at 678–79; *Cuaron,* 700 F.2d at 587–89; *Erb,* 596 F.2d at 419. Although we have yet to exclude evidence discovered pursuant to an otherwise legitimate warrantless entry because of delay, we stress, as we did in *Cuaron,* that "we do not here hold that the presence of exigent circumstances obviates the need for a warrant in any subsequent search, no matter how long delayed." *Id.* at 590.

The officers' failure to begin the process of obtaining a warrant is especially troubling in a case involving a home, concerning as does the privacy interests of innocent individuals who might, as here, be living with the suspected drug dealer. In this case, Aquino's wife and three children, had they not consented to a search, would have been subject to police presence in their home for at least an hour and a half longer than would have been necessary had the police begun the process of obtaining a warrant when the existence of probable cause first became clear. In addition, had the police sought a search warrant earlier, the warrant might have been available shortly after the entry, eliminating the need for consent, another possible basis upon which an arrestee can later attack the legality of the search. Proper observance of the warrant requirement thus protects both individuals' privacy interests and the government's interest in convicting criminals.

AFFIRMED.