**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Harold CARR, Defendant–Appellant.**

No. 90–6379.

United States Court of Appeals,
Tenth Circuit.

July 25, 1991.

Howard R. Haralson, Oklahoma City, Okl., for defendant-appellant.

M. Jay Farber, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty. with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Before ANDERSON, BARRETT and BRORBY, Circuit Judges.

BARRETT, Senior Circuit Judge.

Harold Carr (Carr) appeals from his conviction and sentence following his conditional plea of guilty entered pursuant to Rule 11(a)(2), Fed.R.Crim.P., 18 U.S.C., to Count III of a three-count indictment charging him with possession with intent to distribute a quantity of phencyclidine (PCP), a Schedule III controlled substance, in violation of 21 U.S.C. § 841(a)(1). Carr was sentenced to fifty-nine (59) months imprisonment, two (2) years of supervised release and a special assessment of $50.00.

Carr's conditional plea of guilty was and is dependent upon the validity of his Motion to Suppress all evidence obtained by federal agents during the early morning of July 4, 1990, from Room 230 of the Crosswinds Inn at 1224 South Meridian, Oklahoma City, Oklahoma. The district court conducted an evidentiary hearing on the mo-tion and thereafter entered an order denying same. (R., Vol. I, Tab 26). The court found that Carr had no standing to contest the search in question and that the government had sustained its burden by a preponderance of the evidence that the warrantless search conducted of Room 230 was justified, relying, in part, on *United States v. Acquino*, 836 F.2d 1268 (10th Cir.1988). *Id.* The district court incorporated, by reference, all findings and conclusions announced at the evidentiary hearing. *Id.*

The district court proceeded pursuant to Rule 12, Fed.R.Crim.P., 18 U.S.C. to hear and decide Carr's Motion to Suppress. In *United States v. Gay*, 774 F.2d 368, 375 (10th Cir.1985), we set forth the standard of appellate review of a district court denial of a motion to suppress:

[W]e must accept the trial court's findings of fact unless they are clearly erroneous. *See United States v. Leach*, 749 F.2d 592, 600 (10th Cir.1984); *United States v. Rios*, 611 F.2d 1335, 1344 (10th Cir.1979). Furthermore, we must consider 'the evidence adduced at the suppression hearing ... in the light most favorable to the government.' *United States v. Leach*, 749 F.2d at 600 (*quoting United States v. Rios*, 611 F.2d at 1344); *see also United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir.1984); *United States v. Di Giacomo*, 579 F.2d 1211, 1216 (10th Cir.1978).

With respect to the trial court's conclusions of law, we have held that "the court's decision should identify the law upon which it relied and state the basis for its conclusion." *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). We review questions of law *de novo*. *Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991); *Pueblo, supra; Osgood v. State Farm Mutual Auto Ins. Co.*, 848 F.2d 141, 143 (10th Cir.1988). The question of whether a search and seizure was reasonable is a question of law. *United States v. McKinnell*, 888 F.2d 669, 672 (10th Cir.1989).

On appeal, Carr contends that the district court erred in (1) concluding that he did not have standing to challenge the illegal

search of his motel room, (2) finding that the exigent circumstances were caused by him (Carr) and not by the police, and (3) concluding that the warrantless search of his motel room was justified based upon the totality of the circumstances.

## I.

We shall first consider Carr's contention that the district court erred as a matter of law in concluding that he did not have standing to object to the allegedly illegal search of his motel room. The facts are not in dispute because Carr did not offer any evidence relative to this issue. Thus, our review is *de novo*. *United States v. Rascon*, 922 F.2d 584 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2037, 114 L.Ed.2d 121 (1991).

In moving to suppress evidence, it is the duty of the moving party to show by a preponderance of the evidence that he/she was personally aggrieved by the alleged search and seizure because it invaded his/her subjective expectation of privacy which society is prepared to recognize as reasonable. *Id.* at 586. "It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's Fourth Amendment rights." *Id.*, *quoting United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1318, 113 L.Ed.2d 251 (1991).

At no time during the course of the trial court's hearings on the Motion to Suppress conducted on September 7, 10 and 11, 1990, did the defendant Carr offer any evidence, (R., Vol. II, p. 33), notwithstanding his obligation to establish a subjective expectation of privacy in the room searched. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). During the September 11, 1990, hearing, the following colloquy occurred:

THE COURT: Counsel, before I rule I want to address one issue that was raised in the briefs which we didn't discuss yesterday and that is the issue of standing. What's your position, Mr. Haralson [counsel for defendant Carr] with respect to the standing issue?

MR. HARALSON: Our position is that he has standing to object to this. He was a resident of the hotel room. He was there. You only register the name of one person; you don't register the name of all the occupants in the hotel.

THE COURT: All right. What does the evidentiary record show with respect to the registration? The government says it's registered in the name of another individual. I assume that is somewhere in the affidavits or in the reports.

MR. HARALSON: I believe it is.

THE COURT: Is there any reference at all with respect to a nexus between your client and that hotel room prior to the entry into the hotel room? In other words, if I were to read these affidavits with a fine-tooth comb again, would I see anything in terms of knowledge about your client that the officers had prior to entering that hotel room?

MR. HARALSON: I don't believe so.

THE COURT: All right. Mr. Farber, [the prosecutor], your position with respect to standing.

MR. FARBER: Your Honor, in the defendant's brief or otherwise, the defendant has never asserted any standing to my knowledge. Again, the court has pointed out that the registration was not to him. There is no nexus. That all he was was there. I don't believe that that raises sufficient standing to warrant him having standing to assert any violation of his constitutional rights.

THE COURT: All right. I'm going to deny the motion to suppress.... the court further finds in this matter that the defendant has no standing to assert any potential fourth amendment violation. The decisions of the Supreme Court of the United States, *Rakas v. Illinois*, [439 U.S. 128], 99 S.Ct. 421 [58 L.Ed.2d 387 (1978)] and *United States v. Salvucci* [448 U.S. 83], 100 S.Ct. 2547 [65 L.Ed.2d 619 (1980)] made clear that the burden is upon the defendant, not the government, to establish standing in the form of a reasonable expectation of privacy with regard to the search of the motel room. *There was no evidence of-*

*fered by the defendant on this point. There was no affidavits or testimony with respect to the issue of standing.* Further the only evidence presented to the court, specifically the reports before the court accompanying the affidavits and accompanying the various motions revealed that the motel room had been rented by a third party individual not presented during the course of these events, and, in my view, the defendant has not established by a preponderance of the evidence that he has standing, a reasonable expectation of privacy in the search of the hotel room. (Emphasis supplied).

(R., Vol. II, pp. 42–3, 57–8).

After the district court ruled on the defendant's motion to suppress, counsel for Carr stated that he (counsel) had misunderstood his burden of proof relative to the issue of standing and, while recognizing that the court had made "sufficient findings and sufficient rulings," he asked the court to accept an affidavit of his client taken by the government at the time of his arrest as a supplement to the record. Counsel stated, however, that he was "not asking the court to take and reopen this whole matter ..." (R., Vol. II, p. 56). The court directed that the affidavit be handed to the clerk and marked as a rejected exhibit. *Id.*

The rejected exhibit contains Carr's statement that he had left Los Angeles, California, about three weeks before the arrest by bus for Oklahoma City and that since then "I have been staying at the Crosswinds Motel, Room 230, on South Meridian, Oklahoma City, Okla ..." (R., Vol. I, Tab 25). The exhibit further contains Carr's statement that he went to the Crosswinds with Eddin Price, Jr., who was jointly indicted with Carr, and that they stayed there until their arrest. *Id.*

■ We hold that the district court did not abuse its discretion in refusing to accept the proferred affidavit following the suppression hearings and the court's findings/conclusions thereon. The standing issue was clearly raised by the government. At no time during the suppression hearings

did the defendant Carr address the issue. It was only after the district court denied the motion to suppress that counsel for Carr presented the affidavit as a "supplement to the record." We reject Carr's argument that "the inadvertence of defendant's counsel to not timely present to the court based upon a misunderstanding of the burden of proof should not be held against this defendant and accordingly should be considered and thereby allowing the defendant the requisite standing to object to the illegal search and seizure." (Brief of Appellant, p. 12).

The affidavit of Special Projects–Narcotics Division Agent Jim Hughes, admitted in evidence during the suppression hearing, states, in part, that "[o]n July 4, 1990, Kevin Waters, Special Agent of the Drug Enforcement Administration, informed me that evening that Room 230, Crosswinds Inn, 1224 S. Meridian, Oklahoma City, Oklahoma, was registered to a female not located in the room." (R., Supplemental Vol. I, Exhibit 1, p. 3). The affidavit of Special Agent Kevin D. Waters, admitted in evidence during the suppression hearing, did not in anywise contain any information relative to Carr's basis for occupancy of Room 230 at the Crosswinds Inn.

In *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court reaffirmed the rule of standing in Fourth Amendment cases stated in *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176 (1969) that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted," and that "a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." 439 U.S. at 134, 99 S.Ct. at 425. Furthermore, a court must consider all of the facts and circumstances of the case in determining whether a defendant's subjective expectation of privacy is legitimate. *United States v. Salvucci,* 448 U.S. 83,

91–93, 100 S.Ct. 2547, 2552–54, 65 L.Ed.2d 619 (1980).

Significant to the case at bar, the majority in *Rakas v. Illinois, supra,* abandoned the "legitimately on the premises" measure of Fourth Amendment rights for the rule that "[c]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." 439 U.S. at 143, 99 S.Ct. at 430. In *Rakas,* the petitioners did not assert a property or a possessory interest in the automobile, nor an interest in the property seized from the glove compartment of the vehicle. However, because they were "legitimately on the premises" of the automobile in that they were in the car with the permission of the owner, they asserted "standing" to raise Fourth Amendment protections. The majority rejected this contention and stated:

> But here petitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers.

439 U.S. at 148, 99 S.Ct. at 433.

■ Thus, even if the rejected affidavit of Carr were to be considered, it would demonstrate only that he and co-defendant Eddin Price, Jr. had occupied Room 230 at the Crosswinds Inn for about three weeks prior to the alleged illegal search and seizure. That in itself would not constitute a showing of a legitimate expectation of privacy inasmuch as Carr did not in anywise demonstrate that the room was registered to him or to Price or that he was sharing it with someone to whom the room was registered. Important considerations in the expectation of privacy equation include ownership, lawful possession or lawful control of the premises searched. *Rakas v. Illinois, supra,* 439 U.S. at 143 n. 12, 99 S.Ct. at 430–31 n. 12. It is to be recalled that Agent Jim Hughes' affidavit related information that Room 230 of the Crosswinds Inn had been registered to a female who had not been "located in the room." Carr does not explain why he did not testify personally at the suppression hearing especially when that testimony could not have been used against him at trial. *Simmons v. United States,* 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).

In *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85, (1990), the Supreme Court held that a place need not be one's "home" in order for one to have a legitimate expectation of privacy. In *Olson,* the Court recognized that one who was an overnight guest in the house could treat that house as his "home" for Fourth Amendment privacy purposes and could successfully challenge the legality of his warrantless arrest there. The Court held that an overnight guest in a hotel room or in the home of a friend has a legitimate expectation of privacy in the premises. It is important to observe, however, that in *Olson* the defendant established his status as an overnight guest, whereas in the instant case Carr did not present any evidence of his expectation of privacy. In all cases, the burden of proof lies with the proponent of a motion to suppress. *Rakas v. Illinois, supra,* 439 U.S. at 130 n. 1, 99 S.Ct. at 424 n. 1.

We affirm the district court's order denying Carr's Motion to Suppress on the ground that Carr failed to sustain his burden of proof that he had a legitimate expectation of privacy in Room 230 when the search and seizure occurred on July 4, 1990.

## II.

■ Carr contends that the district court erred in (a) finding that the exigent circumstances were caused by him and not the police, and (b) finding/concluding that the warrantless search of Room 230 was justified based upon the totality of the circumstances. The government restates the issues into one: "[W]hether the district court erred in its determination that police officers were justified in entering a motel room due to the exigent circumstances cre-

ated by the defendant and his accomplice." (Brief of Appellee, p. 2). We address the issue as posed by the government. In doing so, we elect, just as did the district court, to address this issue notwithstanding our holding that the district court did not err in finding/concluding that Carr has no standing to contest the search in question.

A statement of the relevant facts is as follows. On July 3, 1990, pursuant to the drug investigation involving members of the Oklahoma City Police Department's Narcotics Division and agents of the federal Drug Enforcement Administration (DEA), a confidential informant met with a Marvin Brown who was going to purchase about a kilogram of cocaine. The informant and Brown were surveilled driving to the Crosswinds Inn Motel in Oklahoma city, where Brown entered Room 230. After Brown returned to the car where the informant remained, the informant, who was wired with a body transmitter, told the officers that Brown had shown him about a kilogram of cocaine and that Brown had in his possession a .25 caliber pistol. Shortly thereafter, Brown left the motel area with the informant and was stopped and arrested. The informant then advised the officers that Brown had informed him that he had sampled some of the cocaine while in the motel room, was not satisfied with its quality, and had returned it to the individuals in the motel room. Brown also told the informant that there was an additional kilogram of cocaine in the motel room.

At or about 2:15 a.m. on July 4, 1990—which was approximately one-half hour after Brown had been arrested—officers approached Room 230 of the Crosswinds Inn Motel.

Officer Kevin Waters testified that the officers had approached the door to Room 230 with the intent of interviewing the occupants (R., Vol. II, p. 12). Officer James Hughes testified that following Brown's arrest, the officers discussed their options and decided to speak with the occupants of Room 230 in the hope that the occupants would consent to a search of the motel room. *Id.* at 28–29. He acknowledged, when questioned by the court, that the

officers had obtained a passkey to Room 230 from the motel manager which they planned to use to gain entry in order to detain the occupants if the occupants should refuse permission to search the motel room. *Id.* at 30. Officer Hughes stated that had this occurred, the officers would have undertaken a protective sweep of the motel room area and the occupants would have been detained until a search warrant could be obtained. *Id.* at 31.

Officer Hughes knocked on the door of Room 230. He and the other officers accompanying him were dressed in plain clothes. No firearms were displayed when co-defendant Price pulled back the window curtain. He saw Officer Hughes and opened the door some six or eight inches. Officer Hughes then prepared to identify himself as a police officer and detected a strong odor of phencyclidine (PCP) emanating from the motel room. Hughes was familiar with the odor of PCP based upon prior experiences as a police officer. Before Officer Hughes had an opportunity to identify himself, Price slammed the door shut, locked it, and shouted to another individual inside the motel room that the police were outside the door. Officer Hughes heard a lot of commotion, shuffling and movement inside the motel room and was fearful that contraband was being destroyed. He testified that his past experiences and training as a police officer led him to believe that the occupants of the motel room were drug traffickers who were then attempting to destroy or otherwise dispose of narcotics.

Officer Hughes identified himself as a police officer and advised the occupants of Room 230 to open the door. When there was no compliance, Hughes first attempted to gain access by use of the passkey. Failing to gain entry by use of the passkey, Officer Hughes forced the door open. As he entered the room, he heard the toilet flushing. Officer Williams apprehended Carr in the bathroom pouring a bottle of PCP into the toilet. The room and the two suspects were secured at that time. No search of the room was conducted until a search warrant was obtained about two hours later. A search of the room follow-

ing the issuance of the search warrant revealed two packages of what was believed to be cocaine and a quantity of PCP retrieved from the toilet.

■ The district court opined that the officers could have obtained a search warrant prior to approaching the door to Room 230. Even so, the court found that there were exigent circumstances which were not foreseeable to the officers when they approached the door and that the exigency, while perhaps not unexpected, was not created by the officers. The court identified the exigent circumstances created by the room occupants as the smelling of the PCP and the commotion and shouting inside the room, which gave the officers reasonable suspicion to believe that evidence was being destroyed. (R., Vol. II, pp. 44–45).

The district court relied on *United States v. Acquino*, 836 F.2d 1268 (10th Cir.1988). That case involved a warrantless search of an apartment, and, as here, an appeal was taken from a denial of the defendant's motion to suppress evidence involved in drug trafficking. There the police officers rushed into defendant Acquino's apartment with guns drawn, conducted a "protective sweep" of the premises and arrested Acquino. The sweep disclosed drug paraphernalia. Thereafter, the officers obtained consent to search the apartment. They found cocaine, guns and $3,000 in cash. We affirmed the district court. We reviewed governing Supreme Court cases in reaching the following conclusions:

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of an unknown suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary to prevent the destruction of evidence, and (4) supported by clearly defined indications of exigency that are not subject to police manipulation or abuse.

836 F.2d at 1272.

The district court applied the principles of *Acquino* in making the following oral findings:

In this case, there was probable cause for the police to approach the door [of Room 230] on the evening in question. There was probable cause even prior to knocking on the door to search the room in question as a result of the activities at that room and associated with those suspects prior to the time the room was approached. Moreover, the court finds that there were independent exigent circumstances justifying the intrusion by the police officer in this case in the form of the odor of PCP, the slamming of the door, the commotion that took place inside, the communication between the suspects inside regarding the presence of police and the attempted destruction of evidence.

Further, the court finds that while some of the exigent circumstances here were foreseeable—or some of the circumstances that gave rise to the exigency were reasonably foreseeable, the critical factors here are not subject to police manipulation or abuse.

(R., Vol. II, pp. 46–47).

A trial court's determinations which rest upon credibility and reasonable inferences will not be set aside unless clearly erroneous. *United States v. Skowronski*, 827 F.2d 1414, 1417 (10th Cir.1987); *United States v. Gagnon*, 635 F.2d 766, 769 (10th Cir.1980), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981). Here, the trial court's findings/determinations of probable cause and exigent circumstances are supported by the evidence.

■ The officers were armed with probable cause to believe that a crime had been committed in Room 230 when they approached the door to that room. Following Officer Hughes' knock on the door, the actions and activities which followed, coupled by Officer Hughes' detection of the odor of PCP inside the room, constituted exigent circumstances justifying the warrantless entry. Drug trafficking crimes are serious and in this case the destruction of evidence was underway when the police effected the warrantless entry. The intrusion was limited in scope to a minimum.

The room was secured and no search was undertaken until a search warrant was obtained. "Reasonableness" is the overriding test of compliance with the Fourth Amendment. *Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978). *See also, United States v. Smith*, 797 F.2d 836 (10th Cir.1986). The police conduct in this case was reasonable in the context of the Fourth Amendment.

WE AFFIRM.