**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ALEJANDRO ANTONIO CANAS,

Defendant - Appellant.

No. 11-6060
(D.C. No. 5:10-CR-00215-R-1)
W.D. Oklahoma

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**I.      Introduction**

Defendant-Appellee Alejandro Antonio Canas was charged in a one-count indictment with conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1). Before trial, Canas filed a motion seeking the suppression of evidence obtained after a warrantless entry into his residence. Canas argued the Government was unable to prove the applicability of the exigency exception to the warrant requirement. *See United States v. Carter*, 360

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

F.3d 1235, 1241 (10th Cir. 2004) ("Absent consent or exigent circumstances, police may not enter a citizen's residence without a warrant." (quotation and alteration omitted)). The district court denied Canas's motion, concluding the search was supported by probable cause and exigent circumstances. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."). Canas brought this appeal, challenging the district court's conclusion that exigent circumstances existed. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court's denial of Canas's suppression motion.

## II. Background

In 2009, officers with the DEA and the Oklahoma City Police Department began investigating a heroin trafficking organization operating in Oklahoma City. On June 10, 2010, they simultaneously executed ten search warrants at locations identified during the course of the investigation. At one location, they detained and interviewed Alfredo Contreras, an individual they believed to be a leader of the organization. Contreras told investigators about an additional residence from which several individuals were distributing heroin. He gave investigators detailed information about this residence, describing two vehicles located on the property and a fire extinguisher inside the home that contained heroin.

Based on the information provided by Contreras, nine or ten officers traveled to the residence. Because these officers had earlier executed one of the

-2-

ten warrants, they were still dressed in T-shirts or raid vests imprinted with the word "Police." Some were wearing raid helmets. Two or three officers approached the front door of the residence while the other officers stood to the right and left of the front porch. An officer knocked on the front door and announced, "Police department, . . . come to the front door." Officers then observed someone open the blinds, look out the window, and close the blinds. The officer knocked again and said, "Police department, come to the front door." Officers then heard activity inside the house, including the sound of running, cabinets or doors being slammed, and an individual speaking loudly in Spanish. This activity was immediately followed by what one officer described as "awkward quietness." Believing the occupants of the residence were destroying evidence, Lieutenant Keith Jackson instructed an officer to use a battering ram to gain entry into the house.

Once inside, officers encountered an individual attempting to flush drugs down the toilet. Officers also observed a red fire extinguisher, similar to the one described earlier by Contreras. The four occupants of the residence were detained while officers obtained a search warrant. Ultimately, investigators found approximately a pound of black tar heroin in the fire extinguisher.

Appellant Canas was one of the individuals detained at the residence. He was arrested and charged with conspiracy to possess with intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of

heroin. *See* 21 U.S.C. § 841(a)(1). Before trial, Canas moved to suppress the evidence discovered during the search of the residence. The district court denied the motion, concluding the Government successfully met its burden of demonstrating the existence of exigent circumstances to justify the warrantless entry. The matter proceeded to trial and Canas was found guilty of the conspiracy charge. He was sentenced to 120 months' incarceration. The sole issue raised in this appeal is whether the district court erred by denying his motion to suppress.

## III. Discussion

When reviewing the denial of a motion to suppress, this court examines the evidence in the light most favorable to the Government and accepts the district court's factual findings unless they are clearly erroneous. *United States v. Polly*, 630 F.3d 991, 996 (10th Cir. 2011). The ultimate determination of whether a Fourth Amendment violation has occurred, however, is reviewed de novo. *Id*. In the absence of consent, it is well-settled that "police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk*, 536 U.S. at 638. This court has adopted a four-part test to evaluate the propriety of a warrantless entry based on the belief evidence will be destroyed or removed before a warrant can be obtained. Pursuant to that test, the warrantless entry must be "(1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of the evidence is likely, (3) limited in scope to the minimum intrusion necessary to

prevent the destruction of evidence, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse." *United States v. Aquino*, 836 F.2d 1268, 1272 (10th Cir. 1988).

In his motion to dismiss, Canas argued, *inter alia*, that the Government failed to meet the fourth part of the *Aquino* test because the officers "manufactured" the exigency by failing to obtain a warrant before they went to the residence. According to Canas, it was the failure to obtain a warrant that created the subsequent need to forcibly enter the residence. The district court rejected this argument, concluding the circumstances that unfolded after the officers knocked and announced themselves were clear indicators of exigency that were not subject to police manipulation or abuse. No one came to the door even though the officers saw an individual inside the residence and, after that individual looked through the blinds, the officers heard running, loud talking, and the slamming of doors or cabinets. This indicated to the officers there were people inside the residence destroying evidence of drug trafficking. Because the court concluded the three remaining prongs of the *Aquino* test were also met, it denied Canas's motion to suppress.

In his opening appellate brief, Canas advances two arguments, both of which are grounded in the fourth part of the test articulated in *Aquino*. He first asserts the sound of voices and movements inside the residence are not clearly defined indicators of exigency. In the alternative, he argues any exigency that did

exist was created by the manner in which the police conducted the knock and talk: they failed to obtain a warrant, nine or more officers arrived at the residence in unmarked vehicles and out of uniform, they were wearing raid vests and riot helmets, and they were carrying a battering ram. We reject both of these arguments.

When determining whether exigent circumstances existed, this court "evaluate[s] the circumstances as they would have appeared to prudent, cautious, and trained officers." *United States v. Creighton*, 639 F.3d 1281, 1288 (10th Cir. 2011). Here, officers had information from their interrogation of Contreras that four individuals were using the residence to facilitate the distribution of illegal drugs. The officers knocked and announced their presence. Despite the fact that an individual inside the residence opened the blinds and looked outside, no one opened the door or responded to the officers' knocking. Instead, officers heard running, loud talking, and the sounds of doors or cabinets slamming. This frenzied activity was followed by complete silence. We conclude these circumstances, considered as a whole, gave the officers an objectively reasonable basis to believe evidence of drug trafficking activity would be destroyed if they did not immediately enter the residence.

We also reject Canas's alternative argument that the manner in which the officers conducted the knock and talk created the exigency. Each theory he raises in his opening appellate brief to support this argument was considered and

rejected by the Supreme Court in *Kentucky v. King*, 131 S. Ct. 1849 (2011).

Specifically, the Court held law enforcement officers do not create an exigency

by conducting a knock and talk instead of obtaining a warrant even when it is

reasonably foreseeable that their investigative tactics would "lead a drug suspect

to destroy evidence." *Id*. at 1859-60.

Perhaps recognizing his arguments are foreclosed by Supreme Court

precedent, Canas makes a more nuanced, yet perfunctory, argument in his reply

brief. He alleges the exigency exception is not available to the Government

because the actions of the officers amounted to a threat to violate the Fourth

Amendment.[1] *See id*. at 1858 & n.4. ("There is a strong argument to be made

that, at least in most circumstances, the exigent circumstances rule should not

apply where the police, without a warrant or any legally sound basis for a

warrantless entry, threaten that they will enter without permission unless

admitted."). This court will not consider this theory because it is fundamentally

different from the theories raised in his opening appellate brief. *See Cohen-Esrey*

*Real Estate Servs., Inc. v. Twin City Fire Ins. Co.*, 636 F.3d 1300, 1306 n.3 (10th

Cir. 2011) ("This court does not ordinarily review issues raised for the first time

in a reply brief." (quotation omitted)). In his opening brief, Canas recounted the

---

[1]*King* makes it clear that the police manipulation or abuse contemplated by
the fourth part of the *Aquino* test will be present only if the police create the
exigency by "engaging or threatening to engage in conduct that violates the
Fourth Amendment." *Kentucky v. King*, 131 S. Ct. 1849, 1858 (2011).

actions of the officers as support for his assertion it was reasonably foreseeable their conduct "would cause movement, conversation and . . . silence from the most innocent of occupants." As we have already concluded, this foreseeability theory is specifically foreclosed by *King*. 131 S. Ct. at 1859-60. Canas did not make any argument in his opening brief that the conduct of the officers preceding the exigency amounted to an actual or threatened violation of the Fourth Amendment. *See id*. at 1858. Because the argument is not properly raised, it is undeveloped. This court has not been provided with comprehensive opposing arguments on the correct interpretation of *King*, including, but not limited to, the question of whether a threat by law enforcement officers may be implied or whether, instead, it must be express. *See King*, 131 S. Ct. at 1861 (refusing to adopt defendant's proposed rule that "law enforcement officers impermissibly create an exigency when they 'engage in conduct that would cause a reasonable person to believe that entry is imminent and inevitable'" because the test is "nebulous and impractical" and would turn on "subtleties").

## IV.  Conclusion

We conclude the warrantless search of Canas's residence was supported by exigent circumstances. Accordingly, we **affirm** the district court's denial of

Canas's motion to suppress the evidence obtained as a result of that search.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

11-6060, *United States v. Canas*

**GORSUCH, J.**, Circuit Judge, concurring in the judgment


I join the court's judgment and arrive there following almost exactly the same path as my colleagues. My analysis differs in only one minor way. As my colleagues see it, Mr. Canas's opening brief failed to argue that the police created an exigency by threatening to violate the Fourth Amendment and this argument is therefore waived. *See* Maj. Op. at 7. For my part, and though it's admittedly a very close call and I am entirely respectful of my colleagues' contrary view, I would hold that Mr. Canas did enough to preserve and present the argument. In his opening brief, Mr. Canas contended that the officers unlawfully created an exigency by approaching the house in large numbers, dressed in riot gear, wearing helmets, and carrying a battering ram. *See* Opening Br. at 13. It's true Mr. Canas didn't specifically describe this conduct as a threat to violate the Fourth Amendment until his reply brief, but I think his point was clear enough from the start.

Still, I join the court's judgment because Mr. Canas's argument, even if preserved, fails on the merits. Any exigency in this case arose not from the officers' conduct at Mr. Canas's house, but from facts they learned before arriving there. Immediately before heading to Mr. Canas's house, officers had simultaneously executed search warrants at ten locations connected to the same drug trafficking conspiracy. During the raids, they learned for the first time about

Mr. Canas's house and were told that it, too, contained a significant amount of heroin connected with the conspiracy. Under these circumstances and this court's precedents, it was objectively reasonable for officers to fear that news of their raids would spread quickly to the occupants of Mr. Canas's house and cause them to dispose of any drugs before officers could obtain a warrant. *See, e.g.*, *United States v. Aquino*, 836 F.2d 1268, 1273 (10th Cir. 1988) (exigent circumstances existed when police feared that other members of a drug transaction would learn of an arrest and destroy the drugs before a warrant could be obtained). The officers also knew that members of the conspiracy usually sent drugs out from bases like Mr. Canas's house for delivery to customers around 7:30 a.m. each morning, yet they didn't learn about Mr. Canas's house until slightly after 7:00 a.m. ROA vol. 3 at 12. The officers were thus faced with the prospect that, unless they acted quickly, some drugs were likely to be removed from the house in about 30 minutes *even if* word of their raid didn't spread sooner. Combining all these facts together, it is clear enough that the officers didn't create exigent circumstances by their appearance and conduct outside Mr. Canas's house; exigent circumstances existed *before* they got there and justified their appearance and behavior when they arrived. So whether by waiver (as my colleagues conclude) or on the merits (as I see it), Mr. Canas's argument fails and his conviction must be affirmed.