GORSUCH, J., Circuit Judge,
concurring in the judgment.
I join the court’s judgment and arrive there following almost exactly the same path as my colleagues. My analysis differs in only one minor way. As my colleagues see it, Mr. Canas’s opening brief failed to argue that the police created an exigency by threatening to violate the Fourth Amendment and this argument is therefore waived. See Maj. Op. at 839. For my part, and though it’s admittedly a very close call and I am entirely respectful of my colleagues’ contrary view, I would hold that Mr. Canas did enough to preserve and present the argument. In his opening brief, Mr. Canas contended that the officers unlawfully created an exigency by approaching the house in large numbers, dressed in riot gear, wearing helmets, and carrying a battering ram. See Opening Br. at 13. It’s true Mr. Canas didn’t specifically describe this conduct as a threat to violate the Fourth Amendment until his reply brief, but I think his point was clear enough from the start.
Still, I join the court’s judgment because Mr. Canas’s argument, even if preserved, fails on the merits. Any exigency in this case arose not from the officers’ conduct at Mr. Canas’s house, but from facts they learned before arriving there. Immediately before heading to Mr. Canas’s house, officers had simultaneously executed search warrants at ten locations connected to the same drug trafficking conspiracy. During the raids, they learned for the first time about Mr. Canas’s house and were told that it, too, contained a significant amount of heroin connected with the conspiracy. Under these circumstances and this court’s precedents, it was objectively reasonable for officers to fear that news of their raids would spread quickly to the occupants of Mr. Canas’s house and cause them to dispose of any drugs before officers could obtain a warrant. See, e.g., United States v. Aquino, 836 F.2d 1268, 1273 (10th Cir.1988) (exigent circumstances existed when police feared that other members of a drug transaction would learn of an arrest and destroy the drugs before a warrant could be obtained). The officers also knew that members of the conspiracy usually sent drugs out from bases like Mr. Canas’s house for delivery to customers around 7:30 a.m. each morning, yet they didn’t learn about Mr. Ca-nas’s house until slightly after 7:00 a.m. ROA vol. 3 at 12. The officers were thus faced with the prospect that, unless they acted quickly, some drugs were likely to be removed from the house in about 30 minutes even if word of their raid didn’t spread sooner. Combining all these facts together, it is clear enough that the officers didn’t create exigent circumstances by their appearance and conduct outside Mr. Canas’s house; exigent circumstances existed before they got there and justified their appearance and behavior when they arrived. So whether by waiver (as my colleagues conclude) or on the merits (as I see it), Mr. Canas’s argument fails and his conviction must be affirmed.