**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

LUIS ENRIQUE RAMIREZ-FRAGOZO,

      Defendant - Appellant.

No. 11-6086
(D.C. 5:10-CR-00215-R-4 )
( W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **HOLMES**, Circuit Judges.

Louis Enrique Ramirez-Fragozo appeals from his conviction and sentence for

conspiracy to possess with the intent to distribute heroin in violation of 21 U.S.C.

§ 841(a)(1).  He claims the trial court erred in failing to suppress evidence because, in

his view, the warrantless entry into the house where he was staying was not justified by

exigent circumstances created by the officers.  Finally, he contends his sentence is

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th
Cir. R. 32.1(A).  Citation to unpublished decisions is not prohibited.  Fed. R. App. 32.1.
It is appropriate as it relates to law of the case, issue preclusion and claim preclusion.
Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A).
Citation to an order and judgment must be accompanied by an appropriate parenthetical
notation – (unpublished).  *Id.*

procedurally unreasonable.  We affirm.

## BACKGROUND

In 2009, the DEA and the Oklahoma City Police Department began a joint investigation into a heroin trafficking organization operating in Oklahoma City.  On June 10, 2010, the officers coordinated the simultaneous execution of ten search warrants at locations identified during the course of the investigation.  One search resulted in the detention of Alfredo Contreras, the suspected leader of the organization.  Contreras agreed to an interview.  He told investigators about yet another residence from which several individuals were distributing heroin.  He described the residence and told the investigators about two vehicles and a fire extinguisher containing heroin, which could be found there.

With this information, nine or ten officers arrived at the residence still dressed in T-shirts or raid vests imprinted with the word "Police."  Some were wearing raid helmets.  Two or three officers stood on the front porch while the others were arrayed to the right and left of it.  An officer knocked on the front door and announced, "Police department . . . . Come to the front door."  (R. Vol. III, Part 4 at 16.)  In response, officers saw someone open the blinds, look out the window, and close the blinds.  There was no evidence as to what any of the occupants saw.  The officer knocked again and said, "Police department, come to the front door."  (*Id*. at 17.)  This statement was met with the sounds of activity inside the house, including running footsteps, cabinets or doors being slammed, and an individual speaking loudly.  Immediately thereafter, the officers heard

what one officer described as "awkward quietness." (*Id.*) Believing the occupants of the residence were destroying evidence, an officer used a battering ram to enter into the house.

Once inside, officers discovered a man flushing drugs down the toilet. They also saw the red fire extinguisher described earlier by Contreras. The officers detained the individuals in the residence while they obtained a warrant to continue the search. In the end, approximately one pound of heroin was found in the fire extinguisher.

Ramirez-Fragozo was one of the individuals found in the residence. He was arrested and charged as stated above. Before trial, his co-defendant, Alejandro Canas, moved to suppress the evidence discovered during the search of the residence. He joined the Canas motion. In denying the motion, the district court concluded exigent circumstances justified the warrantless entry.

Ramirez-Fragozo and Canas were tried together.[1] Both were found guilty of the charged conspiracy. Ramirez-Fragozo was sentenced to 139 months imprisonment; Canas was sentenced to 120 months.[2] (Appellant Br. at 3, 30.)

---

[1] Two other defendants, Pedro Caras-Beltan and Renando Lopez-Payan, pled guilty to the conspiracy offense.

[2] Canas appealed, raising only whether the district court erred in denying his motion to suppress. We affirmed his conviction and sentence in *United States v. Canas*, 462 F. App'x 836 (10th Cir. 2012) (unpublished).

**DISCUSSION**

A.      Motion to Suppress

When reviewing the denial of a motion to suppress, we examine the evidence in the light most favorable to the Government and accept the district court's factual findings unless they are clearly erroneous. *United States v. Polly,* 630 F.3d 991, 996 (10th Cir. 2011). The ultimate determination of whether a Fourth Amendment violation has occurred, however, is reviewed de novo. *Id.*

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011). However, this presumption can be overcome in certain circumstances, one being when there is probable cause to believe a crime has been, or is being, committed and "'the exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* (quoting *Mincey v. Arizona,* 437 U.S. 385, 394 (1978)). Ramirez-Fragozo does not contest probable cause; instead he argues: (1) there was no genuine exigency; and (2) any exigency came to be only because the officers threatened to violate his Fourth Amendment rights, a circumstance defeating the exigency exception.

We rejected Ramirez-Fragozo's first argument in *Canas*. There, we said:

> When determining whether exigent circumstances existed, this court "evaluate[s] the circumstances as they would have appeared to prudent, cautious, and trained officers." *United States v. Creighton,* 639 F.3d 1281, 1288 (10th Cir. 2011). Here, officers had information from their interrogation of Contreras that four individuals were using the residence to facilitate the distribution of illegal drugs. The officers knocked and announced their presence. Despite the fact that an individual inside the

- 4 -

residence opened the blinds and looked outside, no one opened the door or responded to the officers' knocking. Instead, officers heard running, loud talking, and the sounds of doors or cabinets slamming. This frenzied activity was followed by complete silence. We conclude these circumstances, considered as a whole, gave the officers an objectively reasonable basis to believe evidence of drug trafficking activity would be destroyed if they did not immediately enter the residence.

*Canas*, 462 F. App'x at 838-39. Ramirez-Fragozo presents the same arguments as those presented in *Canas*; we affirm for the reasons announced by the *Canas* panel.

Ramirez-Fragozo's opening brief specifically argues the exigency exception is not available to the Government because the actions of the officers amounted to a threat to violate the Fourth Amendment. *See King,* 131 S.Ct. at 1858 & n.4 ("There is a strong argument to be made that, at least in most circumstances, the exigent circumstances rule should not apply where the police, without a warrant or any legally sound basis for a warrantless entry, threaten that they will enter without permission unless admitted.").

We did not consider this issue in *Canas* because it had not properly been raised. *See Canas*, 462 F. App'x at 839. However, in a concurring opinion, Judge Gorsuch indicated he would resolve the issue as follows:

> Any exigency in this case arose not from the officers' conduct at Mr. Canas's house, but from facts they learned before arriving there. Immediately before heading to Mr. Canas's house, officers had simultaneously executed search warrants at ten locations connected to the same drug trafficking conspiracy. During the raids, they learned for the first time about Mr. Canas's house and were told that it, too, contained a significant amount of heroin connected with the conspiracy. Under these circumstances and this court's precedents, it was objectively reasonable for officers to fear that news of their raids would spread quickly to the occupants of Mr. Canas's house and cause them to dispose of any drugs before officers could obtain a warrant. *See, e.g., United States v. Aquino,* 836 F.2d 1268, 1273 (10th Cir.1988) (exigent circumstances existed when police feared that other members of a drug transaction would learn of an

arrest and destroy the drugs before a warrant could be obtained). The officers also knew that members of the conspiracy usually sent drugs out from bases like Mr. Canas's house for delivery to customers around 7:30 a.m. each morning, yet they didn't learn about Mr. Canas's house until slightly after 7:00 a.m. The officers were thus faced with the prospect that, unless they acted quickly, some drugs were likely to be removed from the house in about 30 minutes *even if* word of their raid didn't spread sooner. Combining all these facts together, it is clear enough that the officers didn't create exigent circumstances by their appearance and conduct outside Mr. Canas's house; exigent circumstances existed *before* they got there and justified their appearance and behavior when they arrived.

*Id*. at 4. We agree.

We emphasize two fundamentals: First, the facts creating the exigency occurred well prior to the officers' arrival at the house, as discussed above. Second, the officers made no overt threat to violate the occupant's rights. After their arrival, the officers knocked on the door several times; they twice announced their presence; they twice asked the occupants to come to the door; and they twice waited for a response. This is not a "demand that amounts to a threat to violate the Fourth Amendment." *King*, 131 S. Ct. at 1863.

Ramirez-Fragozo argues the "show of military force . . . clearly implied that if there was no compliance with their demands the Fourth Amendment would be violated," (Appellant's Br. at 27). However, there was no evidence that the occupants were aware of the extent of the police presence or felt threatened. Mostly we have the suppositions of counsel. We know only that someone spread a blind, peeked out of the window and then drew the blind. We have no idea what the occupants saw or thought.

But we know that after the peek there was a flurry of activity, reasonably suggesting destruction of evidence. Before the officers arrived they were legitimately

- 6 -

concerned that critical evidence would be lost if they did not act decisively. The events at the door exacerbated those pre-existing concerns—destruction of evidence was not merely likely, it was ongoing.

Any exigency created after the officers arrived at the home came not from them, but from Ramirez-Fragozo or his compatriots. Occupants of a residence have no obligation to respond to the knock on the door and, if they choose to do so, they need not speak with the officers and they need not respond to their questions or allow them entry. *See id.* at 1862. "Occupants who choose not to stand on their constitutional rights but instead elect to attempt to destroy evidence have only themselves to blame for the warrantless exigent-circumstances search that may ensue." *Id.* at 1862.

The district court did not err in denying Ramirez-Fragozo's motion to suppress.

B.      Sentencing

Ramirez-Fragozo also claims the district court imposed a procedurally unreasonable sentence because its sentencing decision, allegedly under 18 U.S.C. § 3553(a), was a de facto application of an enhancement for obstruction of justice which was made without an adequate factual explanation. The reasonableness of a sentence is reviewed under a deferential abuse-of-discretion standard, considering both the procedural and substantive components. *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). In our procedural review, we look to the manner in which the district court calculated and explained the sentence. *Id.*

Ramirez-Fragozo did not object to the procedure employed. Therefore, we review for plain error. *United States v. Ruiz-Terrazas*, 477 F.3d 1196, 1199 (10th Cir. 2007).

Ramirez-Fragozo must demonstrate error that was plain and affected his substantial rights. *Id.* If he succeeds, he must also demonstrate that the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See id.* He does not quarrel with the application of the plain error standard, yet he presents no argument as to how he has met its stringent requirements. Therefore, we decline to consider this claim. *See United States v. Solomon,* 399 F.3d 1231, 1238 (10th Cir. 2005) (concluding a defendant waives a plain error argument when he or she fails to address the plain error requirements).

Affirmed.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge