**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph D. CHAVEZ,**
**Defendant-Appellant.**

No. 86–1720.

United States Court of Appeals,
Tenth Circuit.

March 2, 1987.

Martha A. Daly of Rothstein, Bailey, Bennett, Daly & Donatelli, Santa Fe, N.M. (Timothy J. Padilla and Michael Alarid, Jr., with her on the briefs), for defendant-appellant.

James D. Tierney, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Larry Gomez, Asst. U.S. Atty., with him on the brief), for plaintiff-appellee.

Before LOGAN and ANDERSON, Circuit Judges, and SAFFELS, District Judge *.

SAFFELS, District Judge.

Joseph Chavez was convicted of possession with intent to distribute cocaine and the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(B), as charged in Counts 7, 8 and 9 of the Indictment; and in aiding and abetting in violation of 18 U.S.C. § 2, as charged in Counts 7 and 8 of the Indictment. On appeal, Chavez asserts that the evidence obtained in the warrantless search of the garage on Atrisco Street and all evidence stemming from the detention and arrest of Chavez should have been suppressed. Chavez further argues that the evidence found pursuant to the pat-down search of him at the time of the search on November 6, 1985, should have been suppressed. We disagree with Chavez and confirm the conviction.

## I. *Background*

Chavez' arrest stemmed from a combined investigation of federal and state law enforcement officials in Albuquerque, New Mexico. Marcel Garcia and Joseph Chavez were indicted for the crimes of possession with intent to distribute cocaine and the distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 2.

Based on his earlier contacts involving drug transactions with Marcel Garcia, Detective Gene Clark told Garcia that he wished to purchase four ounces of cocaine on November 6, 1985. Garcia agreed to arrange the sale of four ounces of cocaine to Detective Clark for the amount of $7,600. After $7,600 in U.S. currency was photocopied at the Albuquerque Police Department, Detective Clark took this money to use as "buy money" for the transaction. Detective Clark met with Mr. Garcia at his residence where it was arranged that Mr. Garcia would first obtain four ounces of cocaine for Detective Clark and then meet with Detective Clark, at which time the cocaine and purchase money would be exchanged. It had been arranged that Detective Gene Clark was to follow Garcia to a location closer to Garcia's "connection." It had also been agreed that Garcia would speak to his connection personally about fronting the drugs.

On the evening of November 6, 1985, Detective Clark and other members of the Albuquerque Police Department engaged in a surveillance of the activities of Garcia. A surveillance unit first observed Garcia early the evening of November 6th while he was meeting with undercover Detective Clark. The surveillance team then observed Garcia and Detective Clark travel from the parking lot of a grocery store to that of a laundromat located in southwest Albuquerque. After the meeting between Detective Clark and Garcia, Garcia was observed leaving the location in front of the laundromat and driving to a garage located at 923½ Atrisco Street. This garage was owned and operated by the co-defendant Chavez. After two or three minutes, Garcia was observed leaving the garage and returning to Detective Clark in his new location on South Coors Boulevard.

After returning from the garage and meeting with Detective Clark, Garcia informed Clark that "he had seen the cocaine and that it was beautiful. There must be a pound or more at the shop, and this was the shipment that they had been waiting for." Detective Clark requested that Garcia retrieve a sample of the cocaine that Detective Clark was to purchase. Garcia left Clark and returned to the garage on Atrisco Street for the second time. Garcia then returned to Detective Clark with a sample of cocaine. After receiving the sample, Detective Clark gave Garcia $7,600.00, the purchase price for the four

---

\* The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

ounces of cocaine. The surveillance teams were later informed that a sample had been delivered to Detective Clark, and that Garcia had been given the buy money in the amount of $7,600.00.

After Garcia was given the buy money, he advised Detective Clark that after returning with the four ounces of cocaine, he would signal to Detective Clark and that Detective Clark was to follow him to an unknown point for delivery of the cocaine. Garcia was then observed returning directly to the garage for the third time. After Mr. Garcia was observed exiting the garage on Atrisco, a marked police unit attempted to stop Garcia in the 920 block of South Coors. Instead of pulling over, Marcel Garcia accelerated his vehicle towards Detective Clark. Detective Clark fired his weapon into the front of Garcia's truck. Garcia then slowed and stopped his truck. Garcia was subsequently arrested. At the time of his arrest, a tan plastic bag containing several Ziploc baggies of white powder was found on the floorboard of Garcia's vehicle.

Prior to Garcia's third departure from the garage, the surveillance officers were ordered by their Supervisor, Sergeant Richard Campbell, to secure the garage area and not let anyone leave the garage. Shortly after receiving these instructions, and while Garcia was still inside the garage, one of the surveillance teams observed Howard Gurule, an employee of the garage, leave the garage and cross the street to an auto parts store. One of the surveillance teams was located at this auto parts store. It was there that officers approached Gurule with their guns drawn and forcibly removed him from his car, as he refused to comply with the officers' request.

After Garcia's departure from the Atrisco Garage, and his subsequent arrest, the surveillance teams were notified of these events and were further directed to secure the garage. At that point, immediately after Mr. Garcia had left the garage, and before the officers had a chance to act on their superior's instructions, the bay doors of the garage were closed and the outside lights were extinguished. The main door of the garage was also closed. Detectives Gonzales and Medrano used Gurule's car to ram the bay door of the Atrisco Garage to gain entry. Once the bay door of the garage was rammed, one of the officers jumped from the vehicle and entered the garage through an opening while another officer entered the business through the side door. The police officers entering the garage were wearing police jackets with an insignia which clearly identified them as Albuquerque police officers. Upon gaining entry to the garage, the officers observed four occupants of the garage. Upon the officers' arrival, all the occupants that were inside the Atrisco Garage had begun to scatter in different directions. Officer Carlos Anthony Gonzales, a detective with the Albuquerque Police Department, identified himself to Chavez. Detective Gonzales physically took control of Chavez and fought him to the ground to secure his presence after Chavez resisted Detective Gonzales' restraint of him. The other occupants were told to remain in the immediate area and were later told to lie down on the ground. Other officers then arrived on the scene and the officers conducted a security sweep throughout the premises to determine if there were any other people present in the garage.

After the security sweep was completed, Detective Gonzales placed Chavez under arrest (approximately two to three minutes after the officers' entrance into the garage). At the time of his arrest, Chavez was being held face down on the floor of the garage. After defendant was handcuffed, Detective Gonzales advised him of his Constitutional rights. Detective Gonzales then conducted a "pat-down" search of the defendant for weapons. During the search, Detective Gonzales felt a "bulge" in Chavez' pocket, and believing it to be a weapon, removed an object consisting of a bundle of cash totaling $6,800.00. The officers then questioned Chavez. In response to the officers' questions, Chavez indicated that he was the owner of the business and gave an inaccurate address of 922½ Atrisco, Southwest.

The officers and the occupants of the garage remained in the bay area of the garage with Chavez until a search warrant was obtained, approximately three and one-half hours later. After officers arrived with a search warrant, Chavez was taken into his office, shown the search warrant, and again advised of his Constitutional rights. The officers informed Chavez that if they had to, they would search the entire business. In response, Chavez got up from the couch on which he was sitting and walked to the bathroom and in front of the shower stall. The defendant admitted to the officers that cocaine could be found there. The officers did find a quantity of cocaine in the shower stall and seized it. The officers also seized the $6,800 found on Chavez, guns that had been observed on the premises during the security sweep, additional amounts of cocaine, and some ammunition located in the garage.

On the evening of November 6, 1985, Detective Candelaria of the Albuquerque Police Department requested that Agent Arturo Gonzales of the Federal Bureau of Investigation assist in the investigation. Agent Gonzales met the Albuquerque Police Officers at the Atrisco Garage. He assisted in the investigation in the capacity of inventorying items seized pursuant to the search warrant obtained by the Albuquerque Police Department.

A pre-trial hearing was held on January 16 and 17, 1986, to consider defendant Chavez' motion to suppress. On January 24, 1986, the court filed a written Memorandum Opinion and Order denying Chavez' motion to suppress. On January 24, 1986, a jury trial was held. The jury found defendant Joseph Chavez guilty on Counts 7, 8 and 9 of the Indictment. On March 14, 1986, defendant Chavez was sentenced to a term of eight years, with a special parole term of five years for Counts 7 and 8 (which had been merged for the purpose of sentencing). Chavez was also sentenced for a term of eight years for Count 9, with a special parole term of five years. The sentences imposed were to run concurrently. On May 5, 1986, defendant Chavez filed his Notice of Appeal.

## II. *Warrantless Search*

Chavez asserts that all evidence stemming from the warrantless entry and subsequent searches of the garage should be suppressed because the search and seizure violated his fourth amendment rights under the Constitution. Chavez asserts that the warrantless entry was not justified by the existence of probable cause and exigent circumstances.

 In denying the defendant's motion to suppress, the trial court found that the officers' entry into the garage was supported by probable cause and was done in a reasonable manner, given the exigent circumstances. We agree with the trial court's ruling. It is a matter of law that a warrantless entry for some limited purposes is permissible if police officers have probable cause to search the residence and exigent circumstances are present. *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir.1983) (citing *United States v. Erb,* 596 F.2d 412, 417, 419 (10th Cir.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979)). *See, e.g., United States v. Mabry,* 809 F.2d 671, 677 (10th Cir.1987). The government has the burden of establishing that the officers had probable cause and that exigent circumstances made the warrantless entry necessary. *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir.1983). The government has met its burden.

 Defendant asserts that his presence in the garage which Garcia had visited during the course of a drug transaction does not establish probable cause to arrest him in connection with the drug transaction, absent any suspicious conduct by himself. Nor did Garcia's visit to the garage during the evening of November 6, 1985, without more, establish probable cause to search that business. We must disagree.

Probable cause exists when "known facts and circumstances are sufficient to warrant a man of reasonable prudence the belief that an offense has or is being committed." *United States v. McEachin,* 670 F.2d 1139, 1142 (D.C.Cir.1981) (quoting *United States v. Davis,* 458 F.2d 819, 821 (D.C.Cir.1972)). *See, e.g., United States v.*

*Erb,* 596 F.2d 412, 419 (10th Cir.), *cert. denied,* 444 U.S. 848, 100 S.Ct. 97, 62 L.Ed.2d 63 (1979). In the case of a search, "[p]robable cause exists when circumstances known to a police officer are such as to warrant a person of reasonable caution in the belief that a search would reveal incriminating evidence." *United States v. McEachin,* 670 F.2d at 1142 (quoting *United States v. Hawkins,* 595 F.2d 751, 752, n. 2 (D.C.Cir.1978) (per curiam), *cert. denied,* 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979)).

■ The trial court found that the officers had probable cause to believe that contraband and the buy money given to Garcia by Detective Clark were located at the garage. Earlier on the evening of November 6, 1985, Garcia told Clark that up to a pound of cocaine was to be received by his connection. The officers' surveillance and resulting observation of Garcia's travel to and from the garage between meetings with Clark, and Garcia's presentation of a sample of cocaine to Clark, gave the officers probable cause to believe that the connection, the cocaine, and the money were to be found at the garage on Atrisco. We find that the record clearly establishes that the officers did have probable cause to believe that a drug transaction had occurred at the garage and that incriminating evidence could be seized at the garage.

■ The government also has the burden of establishing that the second prong of the exception for a warrantless search is met in that exigent circumstances existed, making the warrantless entry necessary. *United States v. Cuaron,* 700 F.2d 582, 586 (10th Cir.1983). In assessing whether the burden is met, we are "guided 'by the realities of the situation presented by the record.' " *Id.* (quoting *United States v. McEachin,* 670 F.2d 1139, 1144 (D.C.Cir. 1981) (quoting *United States v. Robinson,* 533 F.2d 578, 581 (D.C.Cir.1976) (en banc))).

When officers have reason to believe that criminal evidence may be destroyed, [*Erb* ], 596 at 417–18, or removed, *McEachin,* 670 F.2d at 1144–45, before a warrant can be obtained, the circumstances are considered sufficiently critical to permit officers to enter a private residence in order to secure the evidence while a warrant is sought.

*Cuaron,* 700 F.2d at 586.

Chavez asserts that the mere possibility that occupants of the garage could be armed was not sufficient to raise an apprehension of danger in the officers' minds. Defendant also asserts that they could not have reasonably feared for the concealment and/or disposal of the evidence including the buy money and the additional cocaine. Defendant argues that the physical properties of marked money and the remainder of the pound of cocaine are not such that it may disappear over the course of two or three hours. Nor had the officers surveilling the garage seen other people arrive or depart such that would warrant their belief that the cocaine or buy money would be removed by others. Finally, the defendant seeks to refute the officers' claim that the extinguishment of lights and the closing of doors was not, without more, suspicious behavior suggesting criminal activity nor justifying the exigent circumstances exception.

In its Memorandum Opinion and Order filed on January 24, 1986, the trial court held that the officers did have reason to believe that the incriminating evidence would be destroyed or removed before a warrant could be obtained. The trial court found that once the officers saw the garage go dark and the doors close, they did have a reasonable suspicion that their presence might be known to those inside the garage. The trial court held that the officers had reason, based on their past experience with drug dealers, to believe that the occupants might be armed. In conclusion, the trial court found that exigent circumstances existed such that the officers could reasonably believe that to ensure their own safety and to protect against the loss of incriminating evidence on the premises, an immediate and forcible entry was necessary.

We must agree with the trial court. We find that there was sufficient evidence proffered by the government to establish that exigent circumstances did exist to jus-

tify the warrantless entry. The police officers' reasonable belief that both the cocaine and the buy money were located in the garage substantiated their concern for loss or removal of that incriminating evidence. The extinguishment of lights and the closing of the doors of the garage, as well as the departure of one of the employees, provided reasonable grounds for the officers to become concerned that the occupants were aware of the officers' surveillance. The police officers' experience in prior narcotics investigations provided foundation for the officers' belief that both the money and the cocaine could be concealed or destroyed within a short period of time. Garcia's representation to Detective Clark indicated that his connection was in possession of cocaine in excess of what was being purchased by Clark. Thus, it was reasonable for the officers to believe that additional cocaine was located in the garage.

Our decision in this case is consistent with our earlier rulings in *Cuaron*, 700 F.2d 582 (10th Cir.1983), and *Mabry*, 809 F.2d 671 (10th Cir.1987). In both *Cuaron* and *Mabry* we found that the agents had reasonable grounds to believe that the defendants may become alarmed and destroy the drugs or leave with the cocaine and buy money. *Cuaron*, 700 F.2d at 590 and *Mabry*, 809 F.2d at 678. The same concerns existed in the case at bar after Garcia and Gurule's arrest. Thus, the officers were armed with probable cause and exigent circumstances. The warrantless entry and the "protective sweep" to ascertain whether there were persons other than the four occupants on the premises who might pose a danger to the officers and to secure the garage were justified. *See Mabry*, 809 F.2d at 678. .

 Defendant Chavez also asserts that the decision in *United States v. Cuaron*, 700 F.2d at 586–87, mandates that the government bears the burden of submitting evidence regarding the availability of a telephone warrant, the time necessary to obtain a telephone warrant, and the reason no telephone warrant was sought to justify their warrantless entry. We note that in determining whether exigent circumstances existed to excuse the warrantless entry, the trial court did not assess the possibility of obtaining a warrant by telephone. We are cognizant of the fact that the time necessary to obtain a warrant is relevant to a determination of whether circumstances are exigent. *United States v. Cuaron*, 700 F.2d 582, 589 (10th Cir.1983). We find, however, that our determination on the possibility of obtaining of a telephone warrant in this case can be distinguished from the determination made in *United States v. Cuaron*. In *United States v. Cuaron*, we stated that Rule 41(c) of the Federal Rules of Criminal Procedure demonstrates that Congress intended to encourage police to procure telephone warrants where the existence of an exigent circumstance is a close question. *Id.* at 588. The government bears no burden in this case of acting in accordance with Rule 41(c) as this investigation and search was conducted purely by state officials. The testimony of Arturo Gonzales, an agent with the Federal Bureau of Investigation, makes clear that there was no federal involvement in the search until after entry had been made into the garage on November 6, 1985. Furthermore, there is no provision under the New Mexico statutes for the securing of a telephone warrant. Rule 17, New Mexico Rules of Criminal Procedure (1974). In the case at bar, federal officers were not involved in the actual search and seizure of the Atrisco Garage until after a search warrant was obtained.

We dealt with a similar situation in *United States v. Mabry*, 809 F.2d 671 (10th Cir.1987). In *Mabry*, we recognized that there were no facilities available in state district court for the acquisition of a telephonic record or provisions in New Mexico Law for a telephonic warrant. 809 F.2d at 678–79. In *Mabry*, we recognized that the decision in *Cuaron* required more than a simple telephone call to obtain a warrant and that time constraints justified the officers' proceeding without a warrant. 809 F.2d at 679 (quoting *Cuaron*, 700 F.2d at 590). We conclude that the Albuquerque Police Department's warrantless search of defendant Chavez' garage was supported

by probable cause and justified by exigent circumstances. We affirm the district court's denial of Chavez' motion to suppress.

### III. *Detention and Arrest*

Defendant asserts that the November 6, 1985 detention and arrest of Chavez was illegal, and that all evidence stemming from that detention and arrest should have been suppressed. Prior to trial, Chavez had moved to suppress any statements he had made, or any evidence obtained, as a result of his alleged illegal detention and arrest on November 6, 1985. Chavez' motion was overruled by the trial court in its Memorandum Opinion and Order filed on January 24, 1985.

■ Probable cause exists when a police officer of reasonable caution would be justified in believing that the individual to be arrested has committed or is about to commit a crime. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). *See, e.g., United States v. Salinas-Calderon,* 728 F.2d 1298, 1300 (10th Cir. 1984). We find that the officers did have probable cause to arrest Chavez without a warrant. The information received from Garcia as to his "connection", and Garcia's travel directly to and from the garage during the drug transaction itself, clearly gave the police officers reason to believe that the occupants of the garage were involved in the distribution of cocaine. Chavez' attempt to run from the garage upon the entrance of the police, as well as his resistance during the police officers' detention of him, also supports a finding of probable cause to believe that Chavez was involved in the drug transaction. The officers' belief that cocaine and the buy money were located in the garage and could be easily removed or destroyed provided probable cause to detain and arrest the defendants to prevent loss or removal of the incriminating evidence. During the officers' security sweep of the garage, two firearms were also observed. We find that the officers had a reasonable belief that Chavez had participated in the commission of a crime. We therefore affirm the trial court's Order overruling Chavez' motion to suppress statements and evidence stemming from the November 6, 1985 detention.

### IV. *Pat-down*

Defendant Chavez asserts that even if the warrantless search of the garage was valid, the officers' "pat-down" search of him was not justified and the evidence seized as a result should have been suppressed. Chavez asserts that his movements away from the officers were consistent with an average citizen's desire to protect himself from any unexpected display of force. Chavez asserts that there was no particularized suspicion that he was armed and dangerous, thus the pat-down search and buy money seized as a result should have been suppressed. The trial court found that it was reasonable for the officers to believe that the occupants of the garage might be armed, based on their prior experience with drug dealers. The trial court found that the officers properly used force to subdue Chavez who was physically resisting the officers, and also gave the officers a reasonable belief that Chavez might have been armed and dangerous. The trial court concluded that the pat-down of Chavez for weapons was proper pursuant to the standards of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Based on our finding that the detention and arrest of Chavez was supported by probable cause, the pat-down search of Chavez and seizure of $6,800.00 was lawful. Unquestionably, when a person is lawfully arrested, the police may make a contemporaneous, warrantless search of the person for weapons and fruits of the crime. *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). We further find that even if the pat-down search of Chavez was not incident to a lawful arrest, the evidence seized as a result of the pat-down search was admissible. If a police officer reasonably believes that a suspect is armed and dangerous, the police officer may conduct a limited protective search of the suspect's outer clothing. *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868,

**1302**

1882, 20 L.Ed.2d 889 (1967). The scope of the search in this case presents no serious problem in light of the standards enunciated by *Terry v. Ohio.* We think the facts and circumstances warranted Officer Gonzales' belief that Chavez was armed and presented a threat to the officers' safety while they were investigating. Chavez' attempt to move about the bay area and out of the grasp of Officer Gonzales' reach; Officer Gonzales' need to use physical force to subdue Chavez who was physically resisting him in his detention of Chavez, (*United States v. Mattes,* 687 F.2d 1039, 1042 (7th Cir.1982)); and Officer Gonzales' observance of a bulge in Chavez' left front pants pocket supported his reasonable belief that Chavez might have been armed and dangerous.

### V. *Conclusion*

We conclude that the officers' warrantless search and seizure of incriminating evidence from the garage was supported by probable cause and justified by exigent circumstances. Probable cause did exist for the detention and arrest of Chavez. The pat-down search of Chavez was incident to a lawful arrest. We therefore affirm the trial court's denial of Chavez' motions to suppress.

AFFIRMED.