Maxine EALUM; Sheryl Ealum; Jody Morris, a minor by and through his next friend and parent Sheryl Ealum; Tom Morris, a minor by and through his next friend and parent Sheryl Ealum; Tim Morris, a minor by and through his next friend and parent Sheryl Ealum, Plaintiffs–Appellees,

v.

Sidney SCHIRARD, individually and in his official capacity as the Sheriff of La Plata County, Colorado; Kelly B. Davis, individually and in his official capacity as a Deputy Sheriff of the La Plata County Sheriff's Office; David Griggs, individually and in his official capacity as a Deputy Sheriff of the La Plata County Sheriff's Office; Frank S. Sandoval, individually and in his official capacity as a Deputy Sheriff of the La Plata County Sheriff's Office, Defendants–Appellants,

and

La Plata County Sheriff's Office, Defendant.

No. 01–1281.

United States Court of Appeals, Tenth Circuit.

July 30, 2002.

Before TACHA, Chief Judge, HENRY and BRISCOE, Circuit Judges.

### ORDER AND JUDGMENT*

BRISCOE, Circuit Judge.

This is an interlocutory appeal from the district court's denial of qualified immunity. Plaintiffs Maxine Ealum, Sheryl Ealum, Jody Morris, Jr., Tom Morris, and

Tim Morris sued defendants Sheriff Sidney "Duke" Schirard and Deputy Sheriffs Kelly B. Davis, David Griggs, and Frank S. Sandoval pursuant to 42 U.S.C. § 1983, contending defendants violated plaintiffs' Fourth Amendment rights during a warrantless entry of the residence of plaintiff Sheryl Ealum. Defendants moved for summary judgment, alleging that qualified immunity barred plaintiffs' § 1983 action. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part, reverse in part, and remand.

A district court's denial of a defendant's motion for summary judgment based on qualified immunity is an immediately appealable collateral order when the issue appealed is the legal question of whether a defendant's conduct, as alleged by the plaintiff, violates clearly established law. *See Medina v. Cram,* 252 F.3d 1124, 1130 (10th Cir.2001).

### I.

In reviewing the denial of a summary judgment motion which raises a qualified immunity defense, we are required to consider the facts in the light most favorable to the party asserting the injury rather than the party asserting the qualified immunity defense. *See Holland v. Harrington,* 268 F.3d 1179, 1185 (10th Cir.2001). Therefore, we accept the following facts for the purpose of determining whether the district court's denial of summary judgment was correct.

On February 27, 1997, Utah law enforcement officials stopped an automobile on eastbound I–70 and discovered 52 pounds of marijuana. The driver of the automobile falsely identified himself as Carlos

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Vasquez. After changing his story several times, Vasquez told the officers he was delivering the marijuana to a "biker-type" male named James, who lived north of Durango, Colorado. He described James as being 35–40 years old with a ponytail. Vasquez agreed to make a controlled delivery. Officer Phil Barney of the Utah State Police contacted Deputy Davis of the La Plata County Sheriff's Department to make the arrangements and Vasquez was transported to La Plata County.

On February 28, 1997, defendants made two attempts to have Vasquez make a controlled delivery of the marijuana to the residence of plaintiff Sheryl Ealum.[1] The first attempt failed because no one was at the residence. The second attempt found Sheryl Ealum at the residence with her three children fathered by Jody James Morris: Jody Jr. age 12, Tom age 8, and Tim age 6. Sheryl Ealum's mother, Maxine Ealum, and her nephew, Eric Morris age 3, were also present. Sheryl Ealum had asked her mother to stay with her children while she took her nephew Eric Morris to a party at the home of James' brother.

Vasquez' entry into Sheryl Ealum's residence was initiated by his knocking on the door. Vasquez was wired so defendants could monitor his conversation. There were over three feet of snow on the ground and blizzard conditions so no one in the residence was expecting visitors. Sheryl Ealum told Vasquez that James was at his brother's house. After her attempt to call someone at James' brother's house failed, she gave Vasquez a tele-

phone number and told him to take his things and go. Vasquez dropped two bags on the floor and left. Since she was concerned about the bags, Sheryl Ealum loaded them into her car and took them with her when she took her nephew to James' brother's house.

Deputy Davis and other officers took Vasquez to a nearby convenience store to interview him regarding the delivery to obtain information to request a search warrant, and several officers remained to watch the residence. From the information received from Vasquez, the officers thought there was only one adult in the residence. Deputy Davis was notified that the only vehicle at the residence was driving away and he directed the officers stationed on the route between the residence and the highway to stop the vehicle. However, the vehicle was not stopped. Deputy Davis returned to the residence. As he approached the residence on foot, a dog began to bark. After he saw someone looking at him through the window, he returned to the surveillance area. He was concerned that there appeared to be a second adult in the residence. He decided to have the SWAT team secure the residence so that evidence would not be destroyed before a search warrant could be obtained. Sheriff Schirard approved the deployment of the SWAT team, but he was not present when the team entered the residence.

A member of the SWAT team knocked and pushed open the door of the residence. As Jody Jr. came toward the door, one of

---

1. There is a dispute as to identification of the residence of Sheryl Ealum as the place for delivery. Deputy Davis testified that Vasquez used landmarks to find the general area of the residence, and that he identified the Ealum trailer house as the place for delivery. Vasquez had been deported and was not available to testify. Deputy Davis stated he knew Jody James Morris lived at the residence, that he was called Jody or James, and that he resembled the general description of a 35 to 40-year-old "biker type" with a ponytail. Deputy Davis also knew that Jody James Morris had been arrested for distribution of marijuana in 1994, and Deputy Davis had seen guns and body armor in the Ealum residence in 1994.

the officers pushed him to the floor with his shield and held him there with his knee. One of the officers led Tim by the back of his shirt from the bedroom, while pointing the laser sight on his weapon at Tim. The officers kicked Tim's puppy from the couch. They pointed their weapons around the residence and herded the occupants into the living room. An officer held Jody Jr. on the couch because he was upset with the way the officers had scared his brother. When the officers decided to search the couch, the boys were forced to lie on the floor. The officers gathered firearms and other items. Deputy Davis and Sheriff Schirard, along with Deputy Patterson, entered the residence to wait for a search warrant. As soon as they were notified that a warrant had been obtained, but prior to its delivery, the residence was searched and marijuana and weapons were confiscated. Criminal charges were filed against James Morris, his brother Robert Morris, and Sheryl Ealum. In the criminal proceedings involving James Morris, the district court found the search was unlawful and suppressed the evidence. All criminal charges filed against the three defendants were subsequently dismissed.

On February 25, 1999, plaintiffs filed their § 1983 action asserting that Sheriff Schirard and Deputy Davis violated their Fourth Amendment rights by ordering and directing a warrantless entry of Sheryl Ealum's residence; that the decision of Sheriff Schirard and Deputy Davis to deploy the SWAT team to secure the premises violated the Fourth Amendment prohibition on use of unreasonable and excessive force; that Deputy Sandoval and Deputy Griggs used unreasonable and excessive force in entering the residence and physically restraining the occupants at gunpoint; and that the arrest of Sheryl Ealum was illegal and without probable cause. Plaintiffs also asserted claims of malicious prosecution, unconstitutional theft of property, failure to supervise, failure to train, and reckless and negligent hiring. The district court was unable to conclude defendants' conduct was objectively reasonable and denied qualified immunity.

## II.

We review the denial of a summary judgment motion asserting qualified immunity de novo. At the summary judgment stage, if the record, taken in the light most favorable to plaintiff, clearly demonstrates the violation of a clearly established right, qualified immunity is not available. *Holland*, 268 F.3d at 1185–86. "In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1185 (internal quotations omitted). The defense of qualified immunity is not a "mere defense to liability," but an immunity from suit altogether, and as a result a claim of qualified immunity should be resolved at the earliest possible stage in litigation so that the benefits of immunity will not be lost. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

We initially consider whether, taken in the light most favorable to the party asserting the injury, the alleged facts show the officers' conduct violated a constitutional right. *Id.* at 201. If such a violation could be shown based on the alleged facts, the next question is whether the right was clearly established. *Id.* In making this determination, the "relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

Defendants complain that the district court used the wrong standard in analyzing their qualified immunity claims, or at least with regard to the question of excessive force. The court collapsed the two-part burden of plaintiffs into one, stating in excessive force cases the substantive inquiry that determines whether the force exerted by police is so excessive that it violates the Fourth Amendment is the same inquiry that determines whether governmental immunity is available. This was the prevailing view of the law at the time. *See Quezada v. Bernalillo,* 944 F.2d 710, 718 (10th Cir.1991). However, three days after the district court's decision, the Supreme Court decided *Saucier* and stated that "the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." 533 U.S. at 197. The Court required that the two-part test be used in all qualified immunity cases, including those where excessive force was an issue. Since our review is de novo and we apply the standard the district court should have applied, the district court's error does not prevent us from analyzing the case using the proper standard.

### III.

Defendants argue that Deputy Sandoval and Deputy Griggs are entitled to immunity on plaintiffs' claim of excessive force. Defendants characterize the officers' actions in the residence as a mere "show of force" and argue there is no constitutional right to be free from such a "show" and, even if there is such a right, its parameters were not "clearly established."

In *Graham v. Connor,* the Supreme Court stated that "[d]etermining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion in the individual's Fourth Amendment interests against the countervailing governmental interests at stake." 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations omitted). The "reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotations omitted).

Taken in the light most favorable to plaintiffs, the facts alleged are that one of the SWAT team officers pushed 12-year-old Jody Jr. to the floor with his shield and held him there with his knee. Another officer led six-year-old Tim by the back of his shirt from the bedroom while pointing the laser sight on his weapon at Tim. The residents were herded into the living room and weapons were pointed around the residence. While other officers searched the house, an officer forcibly held Jody Jr. on the couch because he was upset with the officers for scaring his brother.

■ In *Holland,* we addressed a similar situation where a La Plata County SWAT team was alleged to have trained a weapon on a four-year-old child and to have held an eight-year-old and a fourteen-year-old on the floor at gunpoint. In analyzing whether the conduct violated the Fourth Amendment, we stated:

The display of weapons, and the pointing of firearms directly at persons inescapably involves the immediate threat of deadly force. Such a show of force should be predicated on at least a perceived risk of injury or danger to the officers or others, based upon what the officers knew at that time.... Where a person has submitted to the officers' show of force without resistance, and where an officer has no reasonable cause

to believe that person poses a danger to the officer or to others, it may be excessive and unreasonable to continue to aim a loaded firearm directly at that person, in contrast to simply holding the weapon in a fashion ready for immediate use. Pointing a firearm directly at a child calls for even greater sensitivity to what may be justified or what may be excessive under all the circumstances.

268 F.3d at 1192–93. Under the facts alleged by plaintiffs here, officers herded a grandmother and three minor children into the living room at gunpoint, despite an indication that any of the occupants were a threat. The alleged conduct by the officers, if true, was unreasonable in light of the facts and circumstances that confronted them and violated the Fourth Amendment.

The next question is whether the right alleged to have been violated was "clearly established." There is no question that the general right under the Fourth Amendment to be free from use of excessive force during a seizure has been "clearly established" for some time. *See Holland,* 268 F.3d at 1195–96. However, the inquiry is more specific than the question of whether the conduct of the SWAT team violated a constitutional right. The focus of the inquiry is whether the right was established to the extent that "it would be clear to a reasonable officer that his conduct was unlawful under the situation he confronted." *Saucier,* 533 U.S. at 202; *Holland,* 268 F.3d at 1196. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier,* 533 U.S. at 202.

The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* at 205.

Defendants argue that a standard is "clearly established" only if there is case law directly on point covering the factual situation presented. This, however, is not the measure. *See United States v. Lanier,* 520 U.S. 259, 270–72, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) ("fair warning" requirement under 18 U.S.C. § 242, like "clearly established" requirement in qualified immunity analysis, is not dependent upon "fundamentally similar" prior case law). In *Holland,* we stated that one way to evaluate whether a mistake of law is reasonable is to determine whether substantial grounds existed for the officer to conclude he had legitimate justification for acting as he did. 268 F.3d at 1196. In this case, there does not appear to be any existing grounds to justify the training of a firearm on an unresisting six-year-old child, or the herding of a grandmother and three children at gunpoint. While defendants argue these events did not actually occur, at this stage of the litigation we must construe the evidence in the light most favorable to plaintiffs' assertions. If the events occurred as depicted by plaintiffs, the conduct of the SWAT team officers does not constitute a "reasonable mistake" of what the law requires. The district court did not err in denying defendants' motion for summary judgment on qualified immunity grounds as to the ex-

cessive force claim against Deputy Sandoval and Deputy Griggs.

## IV.

We next address whether Sheriff Schirard and Deputy Davis are entitled to qualified immunity regarding plaintiffs' claim that they ordered and directed an illegal warrantless entry. Defendants argue that the entry was legal because of exigent circumstances, or that they at least had a reasonable belief that there were exigent circumstances requiring a warrantless entry.

"[S]earches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). However, a warrantless entry into a home may be made where there are exigent circumstances, such as a fear of the imminent destruction of evidence. *United States v. Scroger,* 98 F.3d 1256, 1259 (10th Cir.1996).

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of [a] suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

*Id.*

 ▇ Construing the facts in the light most favorable to plaintiffs, it does not appear that there was probable cause to search the residence, let alone exigent circumstances to do so without a warrant. The only indication the officers had that a crime was being committed was the statement by Vasquez that he was to deliver the marijuana to "James," and the fact that Vasquez apparently led the officers to the residence of Sheryl Ealum where a person named James was sometimes present. Vasquez did not deliver the marijuana to "James," but dropped the bags and left over the protestations of Sheryl Ealum. The evidence of exigent circumstances is even more sparse. The officers learned from Vasquez that "James" was not at the residence and that the only persons in the residence were one adult and some children. Deputy Davis stated he believed a warrantless entry was necessary because he saw an adult walk past a window of the residence and that a barking dog had alerted the occupants to his presence. Deputy Davis testified that he was concerned the evidence would be destroyed by flushing it down the toilet, burning it in the stove, pouring it down the sink, or throwing it into a river or a snowbank.

It is difficult to characterize Vasquez' carrying of the marijuana to the residence as a "delivery" since there is no indication that he told the occupants of the residence what he was delivering and the person to whom he was to make delivery was not there. There is no evidence that anyone in the residence might be motivated to destroy the marijuana or that they even knew the packages delivered contained marijuana. It is also difficult to believe that destruction of the delivered marijuana would be easy. Unlike small quantities of drugs, 52 pounds of marijuana would be difficult to dispose of without alerting law enforcement officials. Further, Deputy Davis testified that the main reason for entry was that Sheryl Ealum had left the residence and they would not have entered the residence if she had stayed there. There is at least some evidence, provided by the testimony of SWAT team member Dan Patterson, that the plan was to go into the residence as soon as delivery of the

marijuana was completed, regardless of circumstances. This testimony, taken in the light most favorable to plaintiffs, is very damaging to Deputy Davis' claim of exigent circumstances. There is no evidence that would have led a reasonable police officer to believe that the destruction of evidence was imminent.

Defendants argue that, even if they were mistaken in their conclusion that exigent circumstances justified the warrantless entry into the residence, their mistake was legally reasonable. They cite *United States v. Chavez*, 812 F.2d 1295 (10th Cir. 1987), in support of their argument that the law regarding exigent circumstances is not so clearly established that it would be clear to a reasonable officer that his or her conduct was unlawful.

In *Chavez*, an undercover officer arranged to purchase four ounces of cocaine from Marcel Garcia. Officers followed Garcia to a garage owned by defendant Joseph Chavez. Garcia went into the garage and then returned to tell the undercover officer there was a pound or more of cocaine in the garage. Garcia was asked to obtain a sample and was given money to buy four ounces. Instead of delivering the cocaine to the undercover officer, Garcia attempted to abscond with it and he was arrested. While Garcia was in the garage making the purchase, a person was apprehended as he left the garage. Immediately after Garcia left the garage, the bay doors were closed and the outside lights were extinguished. Officers feared that they had been seen and made a warrantless entry into the garage. This court held the facts established exigent circumstances for the entry.

Defendants argue that *Chavez* is sufficiently similar to the present case to show that the law is not clearly established regarding when police can enter an establishment after fearing their surveillance has been discovered. However, in *Chavez*, the officers had probable cause to believe that a crime was being committed because they conducted a controlled buy of cocaine. Further, the officers had a reasonable fear that the evidence would be destroyed because the person inside the garage suddenly closed the doors and extinguished the outside lights. Here, the officers had no real indication that the persons inside the residence were connected to the marijuana. They did know that the person to whom the marijuana presumably was to be delivered was not at the residence. Although Deputy Davis was concerned that he might have been seen, there were no outward indications that the occupants of the residence would be motivated to destroy the marijuana.

■ There is no absolute test for the presence of exigent circumstances because such a determination ultimately depends upon the unique facts of each controversy. *United States v. Wicks*, 995 F.2d 964, 970 (10th Cir.1993). However, under the facts of this case taken in the light most favorable to plaintiffs, it would be clear to a reasonable officer that exigent circumstances sufficient to justify a warrantless entry into the Ealum residence were not present. The district court was correct in finding that Sheriff Schirard and Deputy Davis are not entitled to qualified immunity on plaintiffs' claim that they directed and authorized an illegal warrantless entry.

## V.

Defendants contend the district court erred in finding they were not entitled to qualified immunity on plaintiffs' claim that Sheriff Schirard and Deputy Davis used excessive force in ordering the deployment of the SWAT team. In analyzing this claim, the district court, and to some extent the parties, lump the decision to de-

ploy the SWAT team claim against Sheriff Schirard and Deputy Davis together with the excessive force claim against the members of the SWAT team. However, it is better analyzed separately because it focuses on the conduct of Sheriff Schirard and Deputy Davis in authorizing the use of the SWAT team rather than the conduct of the SWAT team inside the residence. While the force applied by the team to the occupants of the residence appears excessive, there is no indication that either Sheriff Schirard or Deputy Davis directed the SWAT team to use excessive force or that they exerted any supervisory control over the actual entry. Because they did not participate in the SWAT team's initial entry into the residence, they are liable for the alleged use of excessive force only if there is an "affirmative link" showing they actively participated or acquiesced in the constitutional violation. *See Holland,* 268 F.3d at 1187. There is no evidence of such a link and, therefore, the question is whether, given the facts alleged, the deployment of the SWAT team in and of itself to make the entry constituted excessive force.

> The decision to deploy a SWAT team to execute a warrant necessarily involves the decision to make an overwhelming show of force—force far greater than that normally applied in police encounters with citizens. Indeed, it is the SWAT team's extraordinary and overwhelming show of force that makes "dynamic entry" a viable law enforcement tactic in dealing with difficult and dangerous situations.

*Id.* at 1190. After examining the sparse case law on the subject, in *Holland* we concluded that the decision to deploy a SWAT team was subject to a Fourth Amendment requirement of reasonableness because it "largely determines how the seizure is carried out, thereby determining the extent of the intrusion on the individual's Fourth Amendment interests." *Id.*

■ Even viewing the facts in the light most favorable to plaintiffs, the decision to use the SWAT team to effect entry into the residence was not in and of itself unreasonable. It is true that at the time entry was made, Deputy Davis was aware there were children in the residence. However, he was also aware there was an adult in the residence and that some years earlier there were firearms and body armor in the residence. It was not unreasonable for him to conclude that, should an entry into the residence become necessary, it was possible that resistance might be encountered. Under these circumstances, the decision to use the SWAT team was not unreasonable. *See Holland,* 268 F.3d at 1191 (finding where several persons were inside the residence and firearms were present, concerns were not so unreasonable as to make the decision to employ the SWAT team an unreasonable use of force). As plaintiffs have not shown a Fourth Amendment violation with regard to this claim, we need not determine whether the right at issue was clearly established. *See Saucier,* 533 U.S. at 201.

## VI.

We AFFIRM the district court's denial of defendants' motion for summary judgment based on qualified immunity regarding the excessive force claim against defendants Sandoval and Griggs, and the Fourth Amendment claim (directing a warrantless entry into a residence) against defendants Schirard and Davis. We REVERSE the denial of summary judgment in favor of defendants Schirard and Davis with regard to the excessive force claim in authorizing the SWAT team and REMAND for further proceedings

596

HENRY, Circuit Judge, concurring.

I write separately only to depart from the panel on one point—otherwise I am in complete agreement with the panel's well-reasoned order. My concern stems from the request for qualified immunity by Sheriff Schirard and Deputy Sheriff Davis with respect to their decision to authorize the use of the SWAT team to effect a dynamic entry into the Ealum house. I concur with the panel's outcome on this issue, but I do so because the law is not clearly established.

As already noted, the proper inquiry is whether, on the facts alleged, the plaintiffs have shown that the defendants violated a statutory or constitutional right, see *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001), and, if so, whether the right was clearly established at the time of the alleged conduct, see *Holland v. Harrington*, 268 F.3d 1179, 1186 (10th Cir.2001). The majority concludes Sheriff Schirard and Deputy Sheriff Davis did not violate the Ealums' constitutional rights by deciding to use the SWAT team to make the entry. In my view the facts of this case are critical to the analysis, but they point towards the violation of a constitutional right.

These supervisors may be held liable for the alleged unconstitutional acts of their subordinates if they actively participated or acquiesced in the constitutional violation. See *Winters v. Board of County Comm'rs*, 4 F.3d 848, 855 (10th Cir.1993). A plaintiff may show that " 'an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.' " *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir.2000) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir.1988)). I agree with the panel that there is no affirmative link shown on this record connect-ing the supervisors to the acts of the SWAT team after it entered the house. However, I disagree with the panel's analysis regarding the authorization to use the SWAT team to effect a dynamic entry.

The majority cites *Holland* to support the Fourth Amendment reasonableness analysis, relying on the fact that in the present case there was one adult on the premises and that the supervisors had knowledge that body armor and firearms were present eight years earlier. *Holland*, however, concerned a large, 60–acre compound where the suspect—who had a history of violence—was believed to be present, where several other violent individuals (perhaps as many as eight) were also present, and where there was apparently credible evidence that weapons were actually present at the compound. See 268 F.3d at 1190–91. In contrast, the evidence here suggested that only one adult was present. Moreover, the officers on this scene had no particular reason to believe that the person present was the suspect. Additionally, there was no recent, credible evidence or other cause to believe that weapons were present in the Ealum house. Thus, *Holland* does not support the conclusion that the supervisors' decision here was reasonable under the Fourth Amendment.

As a matter of general legal analysis, *Holland* notes that the reasonableness of the decision to use a SWAT team to enter a home is analyzed by " 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " 268 F.3d at 1190 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Relevant factors include the crime's severity and the potential risk to the safety of the officers or others. *Id.* at 1188.

As to the nature of the crime, this panel recognizes that the officers instructed the drugs be left at the residence *over Ms. Ealum's objections.* The panel notes that "[t]here is no evidence that anyone in the residence might be motivated to destroy the marijuana or that they even knew the packages delivered contained marijuana." Op. at ——. Hence, there is a lack of evidence indicating that anyone in the house was involved in a serious crime, either trafficking in marijuana or destroying evidence.

With respect to the potential risk to those present on the scene, the officers here apparently had no credible belief that anyone in the home was armed. Further, there was no indication that the lone adult present or the children would use any kind of force to resist entry. Thus, at least on the facts as alleged, the supervisors who authorized the dynamic entry had no reason to see a credible threat to anyone's safety (other than the threat associated with the utilization of the SWAT team's own weapons).

The plaintiffs allege that the relevant information was communicated to both Sheriff Schirard and Deputy Sheriff Davis prior to their authorization of the use of SWAT team dynamic entry. None of this evidence is contested by the defendants, and the standard of review on a motion for qualified immunity requires us to view the facts in the light favorable to the plaintiffs. Here, we have the government forcibly depositing the contraband, subsequently failing to observe Ms. Ealum's departure with it, creating the noise that gave rise to its rational for making the SWAT team entry, and lacking any current evidence that weapons were on the premises. Also, the decision to make the entry was made even though officers had been dispatched to detain Ms. Ealum. Had the supervisors simply waited a few minutes to learn the

outcome of Ms. Ealum's detention, they could have avoided the dynamic entry's inherent danger to children, their grandmother, and the family puppy. For these reasons, it cannot be said that any government interest outweighed the Ealums' Fourth Amendment right to be free of the unreasonable use of a dynamic entry's "overwhelming show of force." *Holland,* 268 F.3d at 1190. Thus, I would proceed to the next step of the qualified immunity analysis.

This step leads me to agree with the panel's outcome. The plaintiffs do not cite any cases that are persuasive in showing that the right to be free of this kind of entry was clearly established for purposes of qualified immunity. *See Foote v. Spiegel,* 118 F.3d 1416, 1424 (10th Cir.1997) (stating that for the law to be clearly established, there "must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains."). The reasonableness of authorizing a SWAT team to effect a dynamic entry is a very fact-specific determination. While there may be cases suggesting that such authorization is sometimes unconstitutional, I have not seen any clearly establishing that the complex balancing at issue here weighs in favor of the plaintiffs as a matter of law.

It may be tempting for supervisors frequently to authorize the use of dynamic entry, for an "overwhelming show of force" has the benefit of quickly subduing all occupants of a building in "difficult and dangerous situations." *Holland,* 268 F.3d at 1190. However, there is always some risk of resistance—and thus harm—when the police seek to secure a space. This fact should not in and of itself be sufficient to justify the use of SWAT team raids in all situations. I would require a more particularized showing of an "importan[t]

... governmental interest[ ] ... justify[ing] the intrusion"—such as a recent indication that the occupants are armed and dangerous or that they are engaged in a serious crime—before deciding that the use of dynamic entry did not constitute an impermissible "intrusion on the individual's Fourth Amendment interests." *Holland*, 268 F.3d at 1190.

Because the law was not clearly established, Sheriff Schirard and Deputy Sheriff Davis are entitled to receive qualified immunity on this point. On my reasoning, however, government officers would be put on notice that the authorization of dynamic entry into a rural home is not reasonable under the Fourth Amendment when destruction of evidence is a relatively minor concern (one created in great part by the actions of the police), when the occupants pose little foreseeable risk, and when the only justification for such entry is a forced delivery of a large amount of drugs and a stale allegation that weapons or body armor may have been present on the premises eight years earlier. Therefore, I concur with the panel's result on this matter.